## Staunton

### STACY V. W. M. RITTER LUMBER CO.

September 9, 1912.

1. BOUNDARIES—*Location—Fixed Landmarks—Adjoining Owners—Case at Bar.*—As a general rule, where notorious landmarks, such as corner trees or natural objects, are called for, they are to be regarded as termini, and a straight line is to be run from one terminus to the other, without respect to course or distance, but there may be other calls which show that the line was not intended to be straight, as where a call is to run with a river or public road from one terminus to the other, the stream or road, if it leads to the other terminus, must be followed, though it may diverge from a direct line between the two points. The same rule would apply to a marked line, if there is enough to show that such line, though not a direct line, was intended as a boundary, provided by following the marked line the other terminus can be reached. The same rule is also to be applied where between the termini mentioned there is a call for the line of another person, although it can only be reached by adding another call to the description given. In the case at bar, there was call for a corner at K with Daniel Blankenship, and thence "with a reverse part of one line of the same" to a spruce pine at L. But Blankenship does not corner with the land at K, but at B, and a straight line from K to L does not touch the survey in the name of Blankenship. If, instead of running direct from K to L, the line is run from K to B, and from B to L, the line from B to L runs with the Blankenship line to the spruce pine called for at L. Under these, and other circumstances set out in the opinion, it is held that the call for running with the Blankenship line must be regarded as a landmark, and cannot be ignored, and hence should prevail over the call for course and distance in a grant which was based upon a survey made by a surveyor who was not upon the ground.

Appeal from a decree of the Circuit Court of Buchanan county.  Decree for complainant.  Defendant appeals.

*Affirmed.*

The opinion states the case.

*Chase & Daugherty,* for the appellant.

*M. O. Litz, Greever & Gillespie* and *R. E. Williams,* for the appellee.

BUCHANAN, J., delivered the opinion of the court.

The controversy in this case turns upon the description of the land contained in the grant under which the appellee claims. That grant is dated in 1887. The grant under which the appellant claims is dated in 1900. If, therefore, the descriptive calls in the grant under which the appellee holds embrace the land in controversy, there is no error in the decree appealed from.

The grant to Graham and others, under which the appellee claims, after setting out several lines and corners about which there is no dispute, calls for running with a twenty-three acre survey "N. 70 E. 32 poles to two beech stumps, corner of 115 acres patented in the name of John Brown, with same S. 28 E. 116 poles to a beech and gum; S. 10 E. 68 poles, crossing the creek twice, to a sugar and beech on the bank, corner of a survey in the name of Daniel Blankenship; with the reverse of a part of one line of the same, S. 13 W. 58 poles to a spruce pine on a spur above a cliff, a corner to Martin Blankenship; with his lines S. 58 (W.) 26 poles to a hickory; S. 40 W. 18 poles to a chestnut and chestnut oak."

The land in controversy is the triangle shown in the diagram by the lines "K" to "B," "B" to "L" and "L" to "K." The contention of the appellant is that the line from "K" to "L" is the true boundary line of the 1,000 acre grant. The appellee, on the other hand, insists, and the trial court so held, that the lines from "K" to "B" and from "B" to

A diagram below shows the lines in controversy.

"L" are its boundary lines between the points "K" and "L," which points are recognized corners of the 1,000 acre grant.

The general rule is (and it is not controverted in argument), that where notorious land marks, as corner trees or natural objects, are called for, they are to be regarded as termini, and a straight line is to be run from one terminus to the other, without respect to course or distance. *Smith* v. *Davis*, 4 Gratt. (45 Va.), 50; *Marlow* v. *Bell's Lessee*, 13 Gratt. (54 Va.), 527, 531.

While this is the true rule where no other call is found in the grant but the call to run from one terminus to another, "there certainly may be," as was said by Judge Allen in delivering the opinion of the court in *Marlow* v. *Bell's Lessee, supra,* p. 531, "other calls which show the line was not intended to be a straight line; as where a call is to run with a river or a public road from one terminus to another, the stream or road, if it leads to the other terminus, must be followed, though it may diverge from a direct line between the two points. The same rule would apply to a marked line, if there was enough to show that such line, though not a direct line, was intended as a boundary; provided by following the marked line the other terminus can be reached."

In the case under consideration, in addition to the call S. 13 E. 58 poles from the sugar and beech at "K" to the spruce pine on a spur above a cliff at "L," there is the further call, running with the reverse of a part of one line of a survey in the name of Daniel Blankenship. That survey does not corner on the sugar and beech at "K" and a straight line run from "K" to "L" does not touch the survey in the name of Daniel Blankenship. If, instead of running direct from "K" to "L," the line is run from "K" to "B" and from "B" to "L," the line from "B" to "L" runs with the Daniel Blankenship survey to the

spruce pine called for at "L," which is a corner to Martin Blankenship; but this adds a line to the calls in the 1,000 acre grant. In construing the description in the 1,000 acre grant, a line must be added, as claimed by the appellee, or the call for running with the Daniel Blankenship survey must be disregarded and a straight line run from "K" to "L" as contended for by the appellant.

It appears that the survey upon which the 1,000 acre grant was issued was not actually made along the disputed boundary or immediately on either side of it. The maker of that survey testifies that he did not go upon the ground along the disputed boundary line when the survey was made, but took "the metes and bounds of the description of the adjoining tracts." While it appears that the marks on the corner trees at "K" and "L" indicate that they were marked as if the line ran straight from "K" to "L," it further appears that those marks were not made when the survey upon which the 1,000 acre grant was issued was made, and not until after the year 1900. These marks upon the trees at "K" and "L" cannot, therefore, be of any value in determining the location of the boundary of the 1,000 acre grant between those two points.

That grant was of waste and unappropriated lands. It was bounded in many places by the lines of previous grants. This clearly appears from the calls of the grant. The survey upon which it was issued calls for it to begin at a corner of Andrew Baker and Joseph Dougherty, thence with the latter's lines. It calls for a corner in the line of James May, and thence with his line, and for corners in and running with lines in surveys, respectively, to John B. Justus, Jacob Justus, John Brown, Daniel Blankenship, Martin Blankenship, Abner Kerr and Ashville Smith. These calls together with a plat of the survey show pretty clearly that the effort of the grantees in the 1,000 acre grant was to include the vacant land along the

lines called for. The land seems to have been vacant along many of these lines, and certainly was along the lines of John Brown and Daniel Blankenship, according to the appellant's own showing, for his claim to the land in controversy is based upon a grant junior to the 1,000 acre grant. It clearly appearing that the boundary of the 1,000 acre grant from "K" to "L" was not actually surveyed, but the description in it taken from the descriptions of the adjoining tracts, that the land up to the line "K"-"B" was then vacant and adjoined the 115 acre grant of John Brown, and that the land along the line from "B" to "L" was also vacant and adjoined the survey of Daniel Blankenship, the fair inference is that the land in controversy was intended to be embraced within the boundaries of the 1,000 acre grant.

There is no question that the line from "K" to "B" runs with a line of the John Brown 115 acre survey, nor that the line from "B" to "L" runs with a line of the Daniel Blankenship survey. The call for these objects must, we think, in legal construction be regarded as land marks with which and to which the grantees in the 1,000 acre grant had to go, although they were mistaken in supposing that the sugar and beech was a corner of the survey in the name of Daniel Blankenship. By running to those trees and then with the John Brown survey until a line of the Daniel Blankenship survey is reached, and then with the reverse of one of its lines to the spruce pine at "L," corner to Martin Blankenship, effect is given in a measure to every call of the grant and much less violence is done to the calls than if that which is most material should be entirely disregarded, as would be the case if the appellant's contention were sustained and a straight line should be run from "K" to "L."

This case is very similar in its circumstances to the case of *Shultz* v. *Young*, 3 Ired. R. 385 (25 N. C. 385), 40

Am. Dec. 413, cited with approval in *Marlow* v. *Bell's Lessee, supra,* p. 534, and also to the last named case. In the former case the deed called to run south with A. B.'s line 310 poles to C. D.'s old corner. A. B.'s line did not reach the corner, but at the end of A. B.'s line it was necessary to run at right angles to reach C. D.'s corner. It was held that the line should be run 310 poles on A. B.'s line, and then a straight line to C. D.'s old corner, as that best conformed to the description of the deed, though it was necessary to run two lines instead of the one called for.

In the case of *Marlow* v. *Bell's Lessee,* the patent of S. called to commence at a certain point admitted to be a corner of M.'s survey, and to run with his line a certain course and distance to a white oak corner of C.; and thence with C.'s line a certain course and distance to another corner of C. Following the first call it came to a white oak corner of M., but not the corner of C.; but to get to C.'s corner the line must leave the second corner of M. at nearly right angles and run seventy-nine poles, not running on the line of either M. or C. for that distance. The call for the line of M. was, under the circumstances, held to be the correct call, and S.'s patent was construed to include all the land up to the line of M. In disposing of this last named case, Judge Allen used language which is pertinent and peculiarly applicable to this case. "The (trial) court," he said, "was of opinion that there were manifest and strong reasons for believing that the line called was well known to the parties, and so believing, determined that the call for the terminus should not overrule the rest of the description. It is equally manifest from the calls of this grant, the locator here knew that the waste land he was appropriating was bounded in part by older surveys; that he knew the general position of those surveys and where the lines run; that the surveys

were before him, and that he intended to adopt and did adopt the lines of such surveys where called for, precisely as they had been run originally, and to make them the boundaries of his survey. And those things being so, it seems to me the call for McCoy's line cannot be rejected."

The facts and circumstances of this case are equally as strong, if not stronger, for holding that the call for running with Daniel Blankenship's line cannot be rejected and should pervail over a call for course and distance in a grant based upon a survey made by a surveyor who was not upon the ground.

We are of opinion that the decree of the circuit court should be affirmed.

*Affirmed.*