## Richmond

### Providence Properties, Inc.
### v.
### United Virginia Bank/Seaboard National, Trustee, etc., et al.

January 12, 1979.

Record No. 770599.

Present: I'Anson, C.J., Carrico, Cochran, Harman, Poff and Compton, JJ.

### Virginia National Bank, et al.
### v.
### United Virginia Bank/Seaboard National, Trustee, etc., et al.

January 12, 1979.

Record No. 770478.

Present: I'Anson, C.J., Carrico, Cochran, Harman, Poff and Compton, JJ.

B. M. Millner (Svein J. Lassen; Robert W. Curran; Marshall, Blalock, Garner & Millner, on briefs), for plaintiff in error.

Francis N. Crenshaw (John W. Eppler; Crenshaw, Ware & Johnson, on brief), for defendants in error.

Donald H. Clark (Frederick T. Stant, III; Clark, Hofheimer & Stant, P.C., on briefs), for plaintiffs in error.

Francis N. Crenshaw (Crenshaw, Ware & Johnson, on brief), for defendants in error.

COCHRAN, J., delivered the opinion of the Court.

United Virginia Bank/Seaboard National, Trustee under the Will of William S. Reid, deceased, and Olivia M. Reid (the Reids), instituted an action in ejectment in the court below against Providence Properties, Inc. (Providence). We granted Providence a writ of error to the order of the trial court, acting through Judge Owen, awarding the Reids final judgment (Record No. 770599). After the letter opinion of the trial judge had been issued, but before judgment had been entered pursuant thereto, Virginia National Bank, beneficiary under a deed of trust, which included the land in controversy, and John Thomas and William H. White, Jr., Trustees under said deed of trust (collectively, Virginia National), petitioned to intervene. The petition was denied by order entered by the trial court, acting through Judge Lam, and we granted Virginia National a writ of error. (Record No. 770478).

The land in controversy, containing approximately 4-½ acres, is a portion of a tract of 92.58 acres conveyed to Thomas R. Norris and Ralph T. Norris by deed of M. F. Forbes and Nannie P. Forbes, his wife, dated February .23, 1912. The land was situated near Lynnhaven, then in Princess Anne County, but now within the city of Virginia Beach, between the right-of-way of the Norfolk and Southern Railroad and the road extending from Mapleton to Lynnhaven. A plat of the tract made by C. F. Petrie, C. E., showing metes and bounds and the names of adjoining landowners, was attached to the deed. The plat showed that the property of one of the adjoining landowners, Harper, fronted on the Mapleton to Lynnhaven road.

Prior to 1926, the Norrises made from the larger tract the following conveyances, listed in the order in which they were recorded:

1. Deed dated March 21, 1912 to M. F. Forbes-20 acres described by metes and bounds, and an easement over a 19-foot-wide roadway.

2. Deed dated March 21, 1912 to M. F. Forbes-an easement of right-of-way over a 32-foot-wide parcel leading from lands of Forbes to the Norfolk and Southern right-of-way, the easement to be located by the Norrises.

3. Deed dated November 20, 1913 to Thomas N. Kelly - 10 acres, extending thirty rods (495 feet) along a line parallel to and 16 feet from the Norfolk and Southern right-of-way, extending back between parallel lines "a sufficient distance" to make the parcel, with a rear line parallel to the front line, contain 10 acres. The Norrises reserved for road purposes the strip 16 feet wide lying between the parcel conveyed and the Norfolk and Southern right-of-way.

4. Deed dated March 9, 1915 to H. C. Hill - 10 acres described by metes and bounds and by plat, showing the lot fronting 439 feet on 15-foot road adjacent to Norfolk and Southern right-of-way, with a western line extending along a 12-foot roadway.

5. Deed dated April 2, 1917, to J. L. Burgess - 16.35 acres described by metes and bounds and by plat, showing the parcel extending 770.5 feet along the eastern line of a roadway.

6. Deed dated March 9, 1915 to D. B. Waterfield - 10 acres described by metes and bounds and by plat showing this parcel separated from the parcel described in (4) by a 12-foot roadway.

7. Deed dated August 31, 1920 to Frederick C. Fockelman - 4-1/4 acres, more or less, described by metes and bounds.

8. Deed dated February 24, 1913 to J. T. Harper - 10 acres, beginning 20 feet east of J. T. Harper's property on the Mapleton to Lynnhaven road, extending back between parallel lines 692 feet 5 inches to a ditch, with front and rear lines parallel and of sufficient length to embrace 10 acres. The

Norrises reserved title to the strip of land 20 feet wide extending northwardly from the Mapleton to Lynnhaven road between this parcel and the other land of Harper.

9. Deed dated March 11, 1921 to H. C. Hill - 3-½ acres described by metes and bounds, extending 360 feet along a private road, with a southern line of 385 feet extending to land of Thos. N. Kelly.

10. Deed dated August 31, 1920 to Frederick C. Fockelman - corrects (7) and conveys the same 4-¼ acres described in the earlier deed.

By the foregoing deeds the Norrises conveyed a total of approximately 84.10 acres from the parcel of 92.58 acres. In the same deeds, they reserved title to several roadways, including a roadway 15 feet wide in part and 16 feet wide in part extending a distance of approximately 1,080 feet along the Norfolk and Southern right-of-way; a roadway 32 feet wide extending approximately 715 feet along the western line of the tract; a roadway 12 feet wide extending a distance of approximately 746 feet between the two 10-acre parcels conveyed to Hill (4) and Waterfield (6), respectively; and a 20-foot-wide strip extending from the Mapleton to Lynnhaven Road approximately 692.4 feet along the western line of the 10-acre parcel conveyed to Harper (8).

Moreover, the deeds to J. L. Burgess (5) and H. C. Hill (9) indicate that the 12-foot private road orginally extending between the Hill (4) and Waterfield (6) 10-acre parcels continued along the Hill and Burgess lines to connect with the private road leading to the Mapleton to Lynnhaven road. Thus, after accounting for the lands aggregating approximately 84.10 acres conveyed to various grantees and for the property retained by the Norrises, presumably for highway purposes, containing one to one and one-half acres, the Norrises still retained a parcel of land from the original tract containing 6-½ to 7 acres. Of course, these figures are based upon the assumption that the descriptions in the deeds were accurately followed. However, the plat dated November 29, 1977, made by Miller-Fox, Civil Engineers, and introduced into evidence by stipulation to locate the parcels conveyed by the Norrises from

the 92.58-acre tract, shows that the deed descriptions were not always followed. For example, the parcel conveyed to Kelly, as shown on the 1977 plat, does not have a rear line parallel to the Norfolk and Southern, and contains approximately 12 acres rather than the 10 acres called for in the deed. On the other hand, the parcel conveyed to H. C. Hill in 1915 as 10 acres with a northern line of 439 feet parallel to the Norfolk and Southern, actually has a northern line, as shown on the 1977 plat, of only 384 feet. It is apparent, therefore, that there are many discrepancies between the deed descriptions and the parcels as platted in 1977. These discrepancies were not explained by engineers or surveyors. Since the deed descriptions were not accurately followed, it appears that the Norrises actually held title to a parcel of land approximately 9-½ acres after the conveyances listed above had been consummated.

By deed dated December 21, 1926, the Norrises conveyed to D. B. Waterfield the following parcel:

> "ALL THAT TRACT, PIECE OR PARCEL OF LAND situate in the Town of Lynnhaven, County of Princess Anne and State of Virginia, being 4 & ⅞ acres of land more or less adjoining land formerly deeded by the parties of the first part to the party of the second part, and bounded as follows; Beginning at the North East corner of said land running South 650 ft. along a 12 ft. right of way to lands owned by J. T. Harper thence West 270 ft. along the land of J. T. Harper to land formerly owned by M. F. Forbes, thence North 654 ft. along land formerly owned by M. F. Forbes, thence East along land owned by the party of the second part 388 ft. to the place of beginning. Containing 4 & seven eights acres of land more or less being part of the lands deeded to the parties of the first part by M. F. Forbes and wife, on the 23rd day of February, 1912."

Subsequently, the Waterfield parcels were acquired by William S. Reid and Olivia M. Reid, his wife. William S. Reid died testate, leaving his Will under which United Virginia Bank/Seaboard National qualified as Trustee.

A rough diagram is appended hereto for the purpose of showing the various parcels of land relevant to this controversy. It is to be noted that if the measurements of the lines in the metes and bounds description in the 1926 deed from the Norrises to Waterfield are used, only 4-⅞ acres of the 9-½ acres retained by the Norrises were conveyed, and title to a parcel of approximately 4-½ acres remained in the Norrises. However, if the land conveyed is defined by the adjacent boundaries mentioned in the deed, the entire 9-½-acre tract passed to Waterfield. Thus it is the area of 4-½ acres lying between the land of J. T. Harper and the 4-⅞ acres admittedly conveyed to Waterfield which is in dispute.

There were no conveyances by the Norrises, or their heirs, devisees, or successors in title, between 1926 and 1974. According to stipulation, Thomas R. Norris, widower, died intestate in 1929 in the State of New York, leaving as his sole heir at law, his son, Ralph T. Norris. Ralph T. Norris died in 1938 in Yates County, New York, leaving his Will under which he provided for a life estate in his realty for his wife, who died in 1951, with the remainder to his daughter, Sarah Norris Becker. According to probate records in New York State, Ralph T. Norris owned no property outside that state at the time of his death. In 1974, an attorney, Frank E. Butler, III, obtained special warranty deeds from Sarah Norris Becker and her husband, conveying to Butler the parcel in controversy containing approximately 4-½ acres. By general warranty deed dated September 28, 1974, Butler and his wife conveyed the parcel to Providence, which conveyed this land and other tracts by deed of trust to John Thomas and William H. White, Jr., Trustees, to secure certain indebtedness payable to Virginia National Bank. Thereafter, the Reids filed their motion for judgment in ejectment against Providence.

At trial, in addition to the 1926 deed which described the land conveyed to Waterfield in terms of adjoining boundaries, the Reids relied upon four recorded instruments to show that the disputed parcel was generally reputed to belong to Waterfield. By deed dated February 13, 1947, the heirs at law of J. T. Harper, including Frances Pritchard, and their consorts, conveyed to Norman T. Harper a portion of the J. T. Harper land described as running to a ditch separating this land from propeties of Waterfield and Gallimore. Frances Pritchard, Waterfield, and others conveyed a strip of land to the Commonwealth of Virginia for highway purposes by deed dated April 17, 1952, which contained no reference to land owned by the Norrises or their heirs or devisees. A memorandum

of *lis pendens* dated December 27, 1960, was filed by Virginia Electric and Power Co. in conjunction with a condemnation proceeding instituted to acquire an easement over certain lands, including those of Thomas R. Norris and Ralph T. Norris, or their heirs, devisees and successors in title. The Norris lands were therein described as a 32-foot road, a 12-foot road running between 10-acre parcels, a 15-foot road adjoining the Norfolk and Southern Railway Company, and the continuation of the 15-foot road as a 16-foot road adjoining the Norfolk and Southern. Finally, a plat by W. B. Gallup, County Surveyor, dated July 25, 1947, of lands of C. C. Gallimore and Norma T. Gallimore, showed the adjoining lands of Waterfield extending without interruption to the lands of Harper.

Providence relied upon the metes and bounds and acreage descriptions set forth in the 1926 deed to Waterfield, and repeated in the deed from Waterfield's widow and heirs at law to William S. Reid and Olivia M. Reid, as tenants by the entireties, with right of survivorship, and in the deed from William S. Reid and Olivia M. Reid to themselves as tenants in common, and upon the testimony of Frances Pritchard and Frank E. Butler, III, heard *ore tenus* by the trial court.

Mrs. Pritchard, a daughter of J. T. Harper, testified that her father farmed the disputed property at one time and that her family always called it the "Norris property". The trial court, noting that Mrs. Pritchard was only nine years of age in 1926, concluded that her testimony established no basis for a finding that the disputed property was known as the property of her father.

Butler testified that he sought out Sarah Norris Becker and arranged to purchase the parcel in controversy from her and her husband. Testifying as an expert title examiner, Butler said that since the description in the 1926 deed to Waterfield did not call for a line extending to a point on the line of J. T. Harper's line, he concluded that the call "to lands owned by J. T. Harper" merely "gave an indication of the direction" of the line. Based upon the metes and bounds description, the specified acreage, his interpretation of the call to Harper's land, and the fact that the 1926 deed did not recite that the parcel comprised the remaining lands of the Norrises, he concluded that the deed did not convey the disputed property to Waterfield. Butler testified that prior to his purchase, the property in dispute was assessed in the name of "unknown owner". After his purchase, Butler had the land assessed for three years in the name of Sarah Norris Becker, and paid these taxes.

■ The trial court rejected Butler's rationalization of the call to Harper's lands, noting that the next call in the deed description was "thence west 270 ft. along the land of J. T. Harper". We agree with the trial court's reasoning in this respect. Moreover, in view of the reservations by the Norrises of acreage included in roadways, the 1926 deed could not have stated correctly that it was a conveyance of all remaining Norris lands embraced in the original tract of 92.58 acres. Except for these reservations, of course, the trial court correctly stated that just prior to the 1926 conveyance the Norrises had conveyed all of the 92.58-acre tract other than the parcel bounded by other lands of Waterfield, a 12-foot right-of-way, lands of J. T. Harper, and lands of M. F. Forbes.

■ The general principles applicable in actions for ejectment are well settled. The plaintiff has the burden of proving that he has good title and the right to possession, and he must recover upon the strength of his own title rather than upon the weakness of the defendant's title. *White* v. *Lee*, 144 Va. 523, 132 S.E. 307 (1926).

The 1926 deed to Waterfield contains inconsistent descriptions. The distance between the 10-acre parcel of Waterfield and the lands of J. T. Harper is far greater than the side line measurements specified in the deed, and the acreage of the parcel lying between the Waterfield 10-acre parcel and the Harper lands is more than 9 acres rather than 4-7/8 acres, more or less, as stated in the deed. Virginia National contends that it is inconceivable that the Norrises intended to convey a parcel almost double the area specified in the deed. We disagree.

■ In construing a deed, the intention of the grantor must be ascertained from the entire instrument. *Chesapeake Corp.* v. *McCreery*, 216 Va. 33, 37, 216 S.E 2d 22, 25 (1975). We have held that where a deed contains two descriptions of land equally explicit, but repugnant to each other, we will adopt that description which best expresses the intention of the parties. *Mathews* v. *Gillespie*, 137 Va. 639, 647, 120 S.E. 324, 327 (1923). In that case there was a conflict between two calls, both of which referred to natural monuments, so that the inconsistent descriptions were of equal dignity and relative importance. In the present case, however, we are concerned with inconsistent descriptions, one based upon courses, distances, and acreage, and the other upon adjoining boundaries.

■ We consider quantity to be the least reliable method of describing land. *Reid* v. *Rhodes*, 106 Va. 701, 707, 56 S.E. 722, 724

(1907). Therefore, a description by acreage is inferior to all other deed descriptions.

█ We have also approved the principle of construction that where there is conflict, descriptions by distances give way to calls for known boundaries. *Rucker* v. *Gregory*, 191 Va. 697, 707, 62 S.E.2d 221, 226 (1950). In *Fentress* v. *Pocahontas Club*, 108 Va. 155, 159, 60 S.E. 633, 634 (1908), we affirmed the universal rule that a description by course and distance must yield to a description by natural or permanent objects called for as a boundary. And in *Stacy* v. *Ritter Lumber Co.*, 114 Va. 133, 75 S.E. 1038 (1912), we held that a call to an adjoining property would prevail over a call for course and distance based upon a survey by a surveyor who did not go upon the land. Moreover, in *Richmond Cedar Works* v. *West*, 152 Va. 533, 540, 147 S.E. 196, 198 (1929), we stated that calls for adjoining tracts of land are monuments and where they are certain are monuments of the highest dignity. *See also Clarkston* v. *Virginia Coal & Iron Co.*, 93 Va. 258, 24 S.E. 937 (1896).

█ From the foregoing cases has evolved the following order of preference rule applicable, in the absence of contrary intent, where deed descriptions are inconsistent:

(1)   natural monuments or landmarks;
(2)   artificial monuments and established lines, marked or surveyed;
(3)   adjacent boundaries or lines of adjoining tracts;
(4)   calls for courses and distances;
(5)   designation of quantity.

We reaffirm our approval of this rule. *See* 2 Minor, *Real Property*, § 1076, at 1419, n. 3 (2d ed. Ribble 1928). The rule, however, is not inflexible and will not be applied if to do so would frustrate the intent of the parties to the deed. Indeed, the rule is designed to effectuate the presumed intent of the parties.

Providence attaches great significance to the correlation between the acreage of 4-⅞ acres specified in the deed and the distances set forth in the metes and bounds description. Providence argues that under its construction of the deed the southern boundary line of the parcel conveyed by the 1926 deed would be approximately 270 feet in length, the exact distance specified in the deed, whereas if the entire 9-½ acres passed to Waterfield the southern boundary line would be only 255 feet in length. This discrepancy, if it exists, and we cannot verify it from the record, loses its significance, however, in light of the fact that the northern

boundary line of the same parcel is shown as 400 feet on the Miller-Fox plat, although the 1926 deed calls for this line to be 388 feet in length. We believe that this discrepancy probably occurred through error on the part of the Norrises in deducting the width of the 12-foot right-of-way from the 400-foot line.

We believe that any discrepancy in the length of the southern boundary line which would exist if the Reids' interpretation of the deed is accepted, most likely results from a similar error. This is particularly true in light of the fact that the 12-foot roadway, now known as Pritchard Lane, was widened to 30 feet sometime prior to 1974. In any event, there are further discrepancies between the northern and southern lines of the 4-½-acre parcel as shown on the 1974 plat attached to the deed to Butler and as shown on the 1977 Miller-Fox plat. Indeed, the numerous discrepancies in courses and distances in the various deeds and plats in the record reveal the unreliability of this method of describing property and compel us to conclude that the order of preference rule must be applied in this case.

The 1912 plat of the 92.58-acre tract conveyed to the Norrises showed that Harper owned an adjoining parcel. Harper still owned this parcel in 1926 when the Norrises conveyed to Waterfield. The adjoining Waterfield 10-acre parcel had been shown on a plat attached to the deed to that land, the adjoining M. F. Forbes parcel had been shown on a plat attached to the deed to that land, and the 12-foot right-of-way had been referred to in several deeds. It is a reasonable inference, therefore, that the Norrises knew the location of the boundary on the south as well as the lands adjoining the parcel on the north, east and west.

■ Providence contends that the trial court erred in refusing to admit into evidence certain testimony as to tax records relating to the disputed land. Although no proffer of the evidence was made, Providence apparently wanted to show that neither Waterfield nor the Reids had been assessed for taxes on more than 4-⅞ acres. The trial court rejected the evidence on the ground that it was common knowledge that, absent surveys, properties were assessed at the acreages shown in the deeds.

Under certain circumstances, tax records are properly admissible into evidence. Thus, in *Sulphur Mines Co.* v. *Thompson,* 93 Va. 293, 25 S.E. 232 (1896), an ejectment action, we held that such evidence was admissible to show that the claimants had paid taxes on the disputed property and asserted title thereto. *See also Ferris* v. *Snellings,* 213 Va. 452, 192 S.E.2d 804 (1972).

In the present case, however, the evidence was offered only to show the intent of the parties to the 1926 deed. As there was no proffer of the evidence, the record fails to show that the tax records would have had any bearing on the intent of the parties, and we hold that the trial court did not err in refusing to admit testimony relating thereto.

The intent of the parties to the 1926 deed is determinative. In the absence of evidence to the contrary, the order of preference rule establishes what is presumed to have been the intent. After a careful review of the record before us, we hold that the trial court was justified in applying the order of preference rule and in finding that the intent of the Norrises and of Waterfield in 1926 was to consummate the conveyance to Waterfield of the parcel bounded on the north by the 10-acre Waterfield parcel, on the east by the 12-foot right-of-way, on the south by land of J. T. Harper, and on the west by land of M. F. Forbes, regardless of dimensions and area. Consequently, we find no reversible error in the order of the trial court awarding judgment in ejectment to the Reids.

Providence finally contends that the trial court committed reversible error in denying Virginia National's petition to intervene, a ruling which is also the subject of the Virginia National appeal (Record No. 770478).

The Reids filed their motion for judgment against Providence on June 17, 1975. The letter opinion of Judge Owen, deciding the merits of the case, was dated July 19, 1976. According to affidavits in the record, the Trustees under the deed of trust and the bank officer of Virginia National Bank having cognizance of the deed of trust loan to Providence first became aware of the pendency of the ejectment action on or about September 1, 1976. The Bank and the Trustees filed their petition to intervene on September 23, 1976. In his letter opinion dated October 6, 1976, Judge Lam (Judge Owen having disqualified himself from passing on the issue) decided that Virginia National and the Trustees were necessary parties to the litigation and that the court lacked jurisdiction to enter a valid judgment since all necessary parties were not before the court. However, by order entered on December 10, 1976, the trial court, acting again through Judge Lam, overruled the petition to intervene. The order recited that Virginia National Bank had actual knowledge of the litigation at its inception but did not seek to intervene until the opinion on the merits had been issued. The order further included the ruling that Virginia National Bank was not a necessary party.

■ In Virginia ejectment is a purely statutory action. In 1975 at the time this ejectment action was initiated, Virginia Code § 8-800 (re-numbered § 8.01-133 by Acts 1977, c. 617), specifying the defendants in any ejectment action, read as follows:

> The person actually occupying the premises and any person claiming title thereto or claiming any interest therein adversely to the plaintiff may also, at the discretion of the plaintiff, be named defendants in the action. *If there be no person actually occupying the premises adversely to the plaintiff, then the action must be against some person exercising ownership thereon or claiming title thereto or some interest therein at the commencement of suit.* If a lessee be made defendant at the suit of a party claiming against the title of his landlord such landlord may appear and be made a defendant with or in place of his lessee. (Emphasis added.)

There was no person actually occupying the disputed property when the present action was initiated. Under the provisions of the statute, therefore, the action must be brought against "some person", but not every person, exercising ownership or claiming title to or an interest in the property. Providence, the party defendant, was such a "person".

Virginia National argues that the Trustees under the deed of trust held legal title to the property and were more than mere lienholders. To the contrary, however, we have expressly held that in an action of ejectment a deed of trust should be construed as a mere lien on the property, and the grantor may maintain an action in ejectment in his own name. *Gravatt v. Lane*, 121 Va. 44, 48-49, 92 S.E. 912, 913 (1917).

The cases cited by Virginia National are inapposite. In *Hanks v. Price*, 32 Gratt. (73 Va.) 107 (1879), the statute under which the ejectment action was brought specifically gave a landlord the right to intervene. *McDougle v. McDougle*, 214 Va. 636, 203 S.E.2d 131 (1974), was a chancery suit contesting the mental capacity of the grantor in certain deeds, and we held that the grantor had a

material interest in the litigation and was a necessary party. In this case and others cited by Virginia National there was no controlling statute.

The trial court made it clear that the ruling of the court was limited to a determination of the right to possession as between the parties to the litigation. The resolution of that issue could not affect the rights of Virginia National or others who were not parties. *See Page* v. *Luhring*, 211 Va. 503, 505, 178 S.E.2d 527, 529 (1971). Moreover, Code § 8.01-163 (formerly § 8-832) provides as follows:

> Any such judgment in an action of ejectment shall be conclusive as to the title or right of possession established in such action, upon the party against whom it is rendered, and against all persons claiming from, through, or under such party, by title accruing after the commencement of such action . . . .

We conclude that the trial court correctly ruled that Virginia National was not a necessary party. The Reids named Providence as a party defendant, and thereby complied with the requirements of Code § 8.01-133. Accordingly, we hold that there was no reversible error in the order of the trial court denying the petition to intervene.

*Affirmed as to Record No. 770599.*
*Affirmed as to Record No. 770478.*