COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Callins, White and Bernhard
Argued by videoconference


ELEFTHERIOS NAPIER

v.      Record No. 0645-24-1

MARGERY ANNA CANNON, ET AL.                MEMORANDUM OPINION* BY
                                           JUDGE KIMBERLEY SLAYTON WHITE
ELEFTHERIOS NAPIER                         NOVEMBER 18, 2025

v.      Record No. 0833-24-1

MARGERY ANNA CANNON, ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Tonya Henderson-Stith, Judge

L. Calum Welch (Welch & Wright, PLLC, on briefs), for appellant.

Irving B. Goldstein (David K. Edmonson; Goldstein, Edgar &
Reagan, on briefs), for appellees.


These interlocutory appeals arise from extensive litigation between Eleni Napier's

children and grandchild following her death. In these two appeals (0645-24-1 and 0833-24-1),

appellant, Eleni's son, Eleftherios Napier, challenges three orders that denied his motion for a

nonsuit and that held him in contempt for violating an order requiring him to relinquish

possession of real property to defendants Margery Cannon, Sean Weaver, and the Estate of Eleni

Napier.[1] He makes six multiple-part assignments of error.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] On brief, Napier challenges other orders of the trial court, yet, as discussed below, those
orders are not properly before the court as they were not listed in his notices of appeal.

The preliminary question before we address the assignments of error, however, is whether we even have jurisdiction over these two appeals. Indeed, as subject matter jurisdictional issues "cannot be waived," this Court can raise questions regarding its jurisdiction "sua sponte." *Watson v. Commonwealth*, 297 Va. 347, 352 (2019) (quoting *Morrison v. Bestler*, 239 Va. 166, 169-70 (1990)). We conclude that this Court lacks jurisdiction for both appeals.

BACKGROUND

Action Commencing in the Circuit Court

Napier initiated litigation on September 15, 2023 by filing a motion in the circuit court to resolve a dispute over certain real property in the City of Hampton ("estate dispute"). The motion named as defendants Margery Anna Cannon, his sister and Eleni's daughter; Sean Jay Weaver, Cannon's son and Eleni's grandson; and Eleni's estate. Related to the lower court proceedings is a complex factual and procedural history that we truncate below to the facts relevant to the issue of this Court's jurisdiction.

Napier alleged that his mother, Eleni, owned the real property at issue. However, on November 9, 2022, Cannon, "purportedly in her capacity" as Eleni's power of attorney, "gift[ed]" the property to her child, Weaver, via a quitclaim deed. Napier, who had been living at the property for 13 years, alleged that at the time of the deed Eleni "was a vulnerable person and lacked capacity." Eleni died in January 2023. Cannon subsequently probated a 2009 will and qualified as the executor of the estate. Napier's circuit court pleading alleged that Cannon had either "fraudulently prepared" and "executed" the quitclaim deed without a valid power of attorney or "unduly influenced" Eleni into granting her power of attorney. Accordingly, he asked the circuit court to "compel" Cannon, Weaver, and the estate to disclose all relevant documents and Cannon's actions, so the court could "determine whether . . . Cannon possessed the authority to act as [Eleni's] agent." In addition, he asked the court to rescind the quitclaim deed, remove Cannon as

- 2 -

executor of the estate, award him attorney fees, and order a jury trial to determine whether "the document admitted to probate . . . was truly the will of" Eleni.

<u>Actions Commencing in the General District Court</u>

In June 2023, Weaver wrote Napier a notice to vacate, threatening that if Napier did not vacate within 30 days, he would owe Weaver rent. The letter also asserted that Weaver "never agreed to provide utilities to [Napier] or for [his] benefit" and would "turn them off at the end of" June. Two months later, since Napier remained on the property, Weaver filed an unlawful detainer against him in the general district court. While the matter was still pending, on December 11, 2023, the City of Hampton sent a letter to Napier informing him that he had 72 hours to restore water to the house. The City soon declared the property "unsafe for human occupation" and condemned it due to lack of running water. Napier "removed himself from the property" following this notice. The general district court ruled in favor of Weaver. Napier appealed that ruling to the circuit court.[2] Also during the general district court proceeding, Napier was sanctioned for conduct in that court. Napier appealed the sanction order to the circuit court.

Napier then filed a new action in the general district court requesting relief from an "unlawful exclusion." On December 27, 2023, the general district court entered the ex parte order, an emergency one, permitting Napier to "recover possession" of the property and to "resume" water services. Using the ex parte order, Napier regained possession of the property and had water restored. However, on January 4, 2024, the district court vacated its ex parte order and dismissed Napier's unlawful exclusion action after defendants filed a response to it. Napier appealed that judgment to the circuit court.

---

[2] The circuit court later ruled in favor of Napier on jurisdictional grounds.

- 3 -

All Actions Before the Circuit Court

On January 16, 2024, in response to the general district court's vacatur of the ex parte order and a series of motions filed by both parties, the circuit court ruled orally (in what would become the "status quo order") that "wherever [Napier] was or whatever the status of the property was in regards to who was occupying the property, I want it to go back to that status" within ten days, clarifying that this did not pertain to or affect the parties' "possessory" interests in the house. The circuit court entered the status quo order on February 20, 2024.

On February 12, 2024, after the oral ruling and before the court had entered the status quo order, three circuit court actions occurred. First, defendants moved for the first time for Napier to show cause why he should not be held in contempt for violating the oral ruling, because Napier allegedly refused "to restore the status quo" and had moved back onto the property. In response to the show cause motion, the circuit court entered the first contempt order. While this first contempt order did not explicitly find him in contempt nor impose a penalty, the court stated that it had been "very clear" that "the property was to be restored to its position and its status" before the vacated ex parte order. Further, because Napier had "defied" the court's status quo order, the circuit court ordered him to vacate the property "immediately," remove his personal property within 72 hours, return the keys to defendants, and restore the "status quo."

Second, defendants moved the circuit court to consolidate the three active cases pertaining to the property in question ("motion to consolidate")—Napier's initial estate dispute filed in the circuit court, the de novo appeal of the sanctions order from general district court, and the de novo appeal of Napier's unlawful exclusion action from general district court. The circuit court eventually granted defendants' motion to consolidate.

Third, in response to the defendants' motions, Napier moved to nonsuit his claims, asserting that he was entitled to "a first motion for nonsuit as a matter of right" under Code § 8.01-380 and

that the court could not consider defendants' motions but had to instead dismiss the case without prejudice ("nonsuit motion"). The circuit court denied Napier's nonsuit motion citing Code § 8.01-380(D) and finding that defendants' motions were "tantamount" to a counterclaim because they "are, in essence, asserting a claim outside of that which [Napier's] claim asserts."

### Matters Appealed to this Court

On March 19, 2024, the circuit court entered orders reflecting its oral rulings on all three motions. Napier filed his first notice of appeal to this Court purporting to challenge (1) the first contempt order and (2) the order denying his nonsuit motion. His notice of appeal did not identify the order granting defendants' motion to consolidate nor the status quo order. This Court docketed that notice of appeal under Record Number 0645-24-1.

On April 5, 2024, defendants filed another motion asking for a rule for Napier to show cause why he should not be held in contempt for continuing to violate the court's orders. After argument at a hearing on May 13, 2024, the circuit court found that it had "listened to arguments between [the parties] for months on this same issue" and had "been very specific with . . . Napier that he had to vacate the property." The circuit court entered a handwritten order granting defendants' second show cause motion. It found that Napier "remains in contempt" for willfully violating the status quo order but provided that "no further relief" would be granted to defendants if Napier returned the property's keys to his attorney by noon on May 17, 2024. Two days later, Napier filed a notice of appeal challenging the second contempt order, docketed under Record Number 0833-24-1.

### ANALYSIS

"Before this Court may consider the merits of a case, it must determine whether it has jurisdiction." *Johnson v. Commonwealth*, 72 Va. App. 587, 595 (2020) (citing *Minor v. Commonwealth*, 66 Va. App. 728, 738 (2016)). We are a court of limited jurisdiction with "subject matter jurisdiction over only those classes of cases specified by statute." *Friedman v. Smith*, 68

Va. App. 529, 538 (2018) (quoting *de Haan v. de Haan*, 54 Va. App. 428, 436 (2009)).  Virginia

statute grants general appellate jurisdiction over "any *final* judgment, order, or decree of a circuit

court in a civil matter."  Code § 17.1-405(A)(3) (emphasis added).  A judgment, order, or decree

is final if it "disposes of the entire matter before the court, . . . gives all the relief contemplated,

and leaves nothing to be done by the court except the ministerial execution of the court's

judgment, order, or decree."  Rule 1:1(b); *see also* Rule 1:2(d) (indicating that "any order which

adjudicates fewer than all the claims . . . of fewer than all the parties in the action is not a final

judgment").

Besides our general jurisdiction over final orders, we have limited jurisdiction over

certain interlocutory orders and over final civil contempt judgments.  First, we have discretion to

hear an appeal from a trial court's order for a consolidated "trial" of joined or consolidated

claims.  Code § 8.01-267.8(A); Code § 17.1-405(A)(4).[3]  Second, we have jurisdiction to

consider an appeal from an interlocutory order if it "involv[es] an equitable claim" and "(i)

requires money to be paid or the possession or title of property to be changed or (ii) adjudicates

the principles of a cause."  Code § 17.1-405(A)(5); *see CVAS 2, LLC v. City of Fredericksburg*,

289 Va. 100, 108-09 (2015) (interpreting a prior version of Code § 17.1-405(A)(5) as granting

appellate jurisdiction over an interlocutory order "in any case on an equitable claim" that meets

other criteria as well).  And last, we have jurisdiction over appeals of final civil contempt

judgments.  Code § 19.2-318.

On brief, Napier's appeals challenge five distinct orders: (1) the February 12, 2024 status

quo order; (2) the March 19, 2024 order granting defendants' motion to consolidate; (3) the

---

[3] Code § 17.1-405(A)(4) gives us jurisdiction over a consolidated trial order under Code § 8.01-267.8 and certified questions under Code § 8.01-675.5.  Though defendants' jurisdiction pleading addresses the certified questions statute, Napier's pleadings do not, and it is not at issue here.  The only statutes that Napier cites as conferring jurisdiction over his appeals are the equitable-claim/change-in-possession statute and the civil-contempt-judgment statute.

March 19, 2024 order denying Napier's nonsuit motion; (4) the March 19, 2024 contempt order that required Napier to vacate the property and held that defendants were "entitled to immediate possession"; and (5) the May 13, 2024 contempt order finding that Napier "remains in contempt." Two of those five orders were not challenged by either notice of appeal to this Court – the February status quo order and the March motion to consolidate. "When an appeal from an interlocutory decree or order is permitted, the notice of appeal shall be filed within 30 days from the date of such decree or order, except for pretrial appeals pursuant to § 19.2-398." Code § 8.01-675.3. Here, Napier's notice of appeal filed on April 15, 2024 challenged only the March 19, 2024 orders (1) denying nonsuit, and (2) finding him in contempt; it did not challenge the order consolidating the cases or the status quo order. The notice of appeal filed on May 15, 2024 only challenged the May 13, 2024 order for civil contempt. *Nicholson v. Commonwealth*, 300 Va. 17, 22 (2021) (holding that a timely notice of appeal is a jurisdictional requirement).

None of the appealed orders is a final order, as the entire matter before the court, including Napier's estate dispute that began this litigation, still has not been resolved. *See* Rules 1:1(b), 1:2(d). Thus, our jurisdiction over these appeals, if it exists, must be grounded in our limited interlocutory jurisdiction or in our jurisdiction over final civil contempt judgments.

*A. Nonsuit Order*

The circuit court's order denying Napier's nonsuit motion does not fall within our interlocutory jurisdiction. The order neither "(i) requires money to be paid or the possession or title of property to be changed [n]or (ii) adjudicates the principles of a cause," so we do not have jurisdiction under Code § 17.1-405(A)(5).

- 7 -

*B. Contempt Orders*

We also lack jurisdiction to consider Napier's appeals from the March 19 contempt order and the May 13 contempt order, which required him to vacate the property and granted possession to defendants.

*1. Code § 17.1-405(A)(5) does not confer jurisdiction over the contempt orders.*

Napier maintains that we may review the first and second contempt orders under Code § 17.1-405(A)(5) because they required "possession or title of property to be changed." The challenged orders may indeed have required a change of possession of property from Napier to defendants. But they did not "involv[e] an equitable claim," a statutory precursor to our jurisdiction set forth in Code § 17.1-405(A)(5).

Before claims at law and equity were merged in 2006, "[m]ost actions were traditionally treated as matters to be heard 'at law,'" though the "legislature on occasion allocated various statutory causes of action to one side of the court or the other." Kent Sinclair, *Guide to Virginia Law/Equity Reform and Other Landmark Changes* § 1.06(A), at 44 (2006). Nevertheless, after the merger, each cause of action retains its "historic character." *Id.* at 28. Claims based on statutory rights are generally legal claims unless the General Assembly has defined the statutorily created rights as equitable. *Id.* at 44; *CVAS 2*, 289 Va. at 109 (holding that a claim was equitable "*even though* [it] is statutory in nature" because the General Assembly may "define the statutory rights it creates to be of a legal or equitable nature" and the statute at issue provided that the claim "shall be by bill in equity" (emphasis added)).

In this case, Napier's underlying "complaint," the estate dispute, asserted several equitable claims. *See* Sinclair, *supra*, at 42-44 (providing that recission suits, quiet title suits, probate appeals, and cases adjudicating the validity of a will are "equitable" in nature). But the jurisdictional inquiry under Code § 17.1-405(A)(5) is not whether the underlying *case* involves

an equitable claim.  Instead, we must evaluate whether the appealed interlocutory "*order involve[es] an equitable claim.*"  Code § 17.1-405(A)(5) (emphasis added).  Here, the March 19 contempt order and the May 13 contempt order did not "involve" Napier's equitable claims.  Rather, the record demonstrates that the status quo order commanded the parties to return the property to the "status" it was in before the vacated ex parte order.  When Napier did not vacate the property, defendants filed their first show cause motion, leading to the contempt orders that changed possession of the property from Napier to defendants.

"Ejectment is an action at law to determine title and right of possession of real property." *Brown v. Haley*, 233 Va. 210, 216 (1987) (citing *Providence Props., Inc. v. United Va. Bank/Seaboard Nat'l*, 219 Va. 735, 744 (1979)); Code § 8.01-131 *et seq*.  It is a "purely statutory action" that has been "retained" by the legislature.  *Providence*, 219 Va. at 748; Code § 8.01-131.  Thus, both the contempt orders were based on and involved defendants' legal claim of ejectment.  They did not address, resolve, or otherwise encumber the equitable claims in this litigation.  In fact, when considering defendants' motion to eject Napier and thereafter issuing its status quo order, the court explicitly clarified that its ruling simply confirmed the "standing" general district court vacatur nullifying the ex parte order that had given Napier the right to possession.  The circuit court's order did not address the parties' interests in the house or adjudicate Napier's requested equitable relief.  Consequently, we may not consider the contempt orders under Code § 17.1-405(A)(5) because the orders do not "involve" an equitable claim.

2. *Code § 19.2-318 does not confer jurisdiction because Napier was not punished.*

Napier alternatively contends that we have jurisdiction to consider the contempt orders because they found him in contempt.  Code § 19.2-318 grants us jurisdiction to consider an appeal "[f]rom a judgment for any civil contempt of court."  *See also Jenkins v. Mehra*, 281 Va. 37, 47-48 (2011) (interpreting Code § 19.2-318's jurisdictional grant).  "[A] contempt order is

. . . appealable if it adjudicates all issues of guilt *and imposes a sentence*." *Green v. Keil Plumbing & Heating, Inc.*, 42 Va. App. 539, 545 n.3 (2004) (second alteration in original) (emphasis added) (quoting *Vokes v. Vokes*, 28 Va. App. 349, 355 (1998)). Indeed, an order finding a party in contempt is appealable even if it "suspend[s] execution of the sentence and continue[s] the case" so that the contemnor "could purge himself of the civil contempt." *Peet v. Peet*, 16 Va. App. 323, 326 (1993). But if the court "reserves the imposition of a penalty" following a contempt finding, the judgment is not "final" or "appealable." *Id.* (quoting *E.I. du Pont de Nemours & Co. v. Universal Moulded Products Corp.*, 189 Va. 523, 526 (1949)). "The rationale . . . is that until a contemnor is put to his penalty, all issues have not been adjudicated." *Id.*

The first contempt order does not explicitly hold Napier in contempt. Nevertheless, it does find that Napier had "defied" the court's orders, and during the second hearing that would produce this order, the court explicitly found Napier in contempt and ordered him to vacate the property. In addition, the circuit court's second contempt order explicitly found that Napier "*remains* in contempt." Thus, the record demonstrates that both the contempt orders found Napier in civil contempt.

But those findings do not render the contempt orders appealable under Code § 19.2-318, as neither order imposes any sentence or penalty on Napier. Rather, they merely reiterate and clarify the actions Napier needed to take to comply with the court's earlier status quo order. Specifically, the first contempt order instructed Napier to vacate the property, disconnect the water, and return the keys to defendants, all things that were necessary to return the property to the "status quo" as previously ordered. And the second contempt order stated that "no further relief will be granted by virtue of such contempt herein if the keys" are returned to defendants and *explicitly continued the case* for a status hearing should Napier fail to do so. Neither order imposed a sentence, fine, or any other penalty on the contempt findings.

Consequently, this is not a case where the circuit court imposed a contempt sentence nor is it one where the circuit court suspended execution of a sentence to give Napier an opportunity to purge himself of the contempt. *Peet*, 16 Va. App. at 326. Rather, the court simply *did not impose* a penalty at all on its contempt findings, and "[a] judgment of contempt that . . . reserves the imposition of a penalty is not 'final' and, therefore, is not appealable." *Id.* (citing *E.I.*, 189 Va. at 526). In other words, the contempt orders did not "put" Napier "to his penalty." *Id.* Thus, they are not appealable orders under Code § 19.2-318.

## CONCLUSION

For the foregoing reasons, we dismiss the cases for lack of jurisdiction.

*Dismissed.*