Present:   All the Justices

MACKIE TURNER

                          OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.   Record No. 002839                 November 2, 2001

MARTIN A. THIEL, M.D., ET AL.

          FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
                    AND COUNTY OF JAMES CITY
                    Samuel T. Powell, Judge

     In this appeal, we consider whether the circuit court
abused its discretion by permitting the defendants to call as
an expert witness an individual who plaintiff's counsel had
previously retained to consult and review plaintiff's medical
records.

     The plaintiff, Mackie Turner, filed a motion for judgment
against Martin A. Thiel, M.D., Surgical Specialists, Inc., and
Williamsburg Community Hospital, Inc., in the Circuit Court of
the City of Norfolk.  The plaintiff alleged that Dr. Thiel,
who was engaged in the practice of general medicine and
surgery, breached the standard of care owed to him when Thiel
performed a procedure on the plaintiff known as a
transaxillary first rib resection.  The plaintiff also alleged
that defendant Surgical Specialists is a professional
corporation organized under the laws of Virginia and that
Thiel was an employee, agent, or servant of Surgical
Specialists, acting within the scope of his employment when he
treated the plaintiff.  The plaintiff further alleged that

Williamsburg Community Hospital breached certain duties owed to him.

The defendants filed responsive pleadings and a motion to transfer venue to the Circuit Court of the City of Williamsburg and the County of James City. The defendants' motion to change venue was granted and later, the plaintiff took a voluntary nonsuit of his action against Williamsburg Community Hospital.

In accordance with a pretrial motion, the remaining parties designated their respective expert witnesses. The defendants designated Dr. Richard J. Sanders as one of their expert witnesses. The plaintiff filed a motion to disqualify Sanders. The following facts were considered by the circuit court during a hearing to resolve the motion.

Sanders is widely recognized as an expert in the medical community on the subject of thoracic outlet first rib resection surgery, the procedure that Thiel performed on the plaintiff. Sanders has performed approximately 1,500 of these procedures and has written two books and 24 articles about this procedure.

In December 1998, prior to filing a motion for judgment, plaintiff's counsel had a telephone conversation with Sanders and asked him to review the plaintiff's potential medical malpractice claim against Thiel. Plaintiff's counsel provided

Sanders with a verbal synopsis of the facts relating to the plaintiff's care and treatment. Sanders determined he had no conflict of interest and agreed to review any material that plaintiff's counsel would provide to him. Plaintiff's counsel and Sanders also discussed fee arrangements, and Sanders forwarded by facsimile his curriculum vitae to plaintiff's counsel.

Plaintiff's counsel forwarded to Sanders a letter dated December 16, 1998. The letter, which consisted of two pages, summarized the plaintiff's potential claim against Thiel. Plaintiff's counsel specifically asked Sanders to "focus" on certain acts of possible medical negligence and issues relating to proximate causation. Plaintiff's counsel enclosed plaintiff's medical records with the letter.

Sanders reviewed the medical records as requested by plaintiff's counsel. Sanders and plaintiff's counsel had a telephone conference on January 4, 1999, and Sanders discussed the care and treatment that Thiel had provided to the plaintiff. Plaintiff's counsel discussed additional information with Sanders about the plaintiff's case, and plaintiff's counsel generated 12 pages of notes relating to the conversation. At the conclusion of the conversation, Sanders informed plaintiff's counsel that he was not interested in serving as the plaintiff's expert witness.

Subsequently, Sanders mailed plaintiff's counsel a bill in the amount of $840.00 for two hours and 20 minutes for reviewing the medical records and participating in the telephone conference.

Defendants' counsel contacted Sanders in August 1999 and was unaware that Sanders had previously consulted with plaintiff's counsel. Sanders stated the following in a sworn affidavit which was submitted, without objection, to the circuit court. Sanders was retained by the defendants in August 1999 to review medical records relating to the plaintiff's medical malpractice claim. Sanders reviewed the records and agreed to serve as an expert witness on behalf of the defendants.

Sanders had "no independent recollection of having reviewed this case for [plaintiff's counsel], nor [did he] recall the specifics of any [telephone] conversation with [plaintiff's counsel]. Based upon the recitations in the bill [that he submitted to plaintiff's counsel] showing a limited record review of 2 hours and the short duration of the billed phone call (20 minutes) it is [Sanders'] best supposition that the short phone call was simply a conversation where [he] declined to serve [as] an expert witness. [He] destroyed the medical records provided by [plaintiff's counsel]."

4

Sanders also stated that he recorded two pages of notes contemporaneously with his review of the plaintiff's medical records, but his notes do not reflect any discussions with plaintiff's counsel regarding trial strategy or confidential communications. Sanders did not prepare a written report, nor did he send any correspondence other than his bill to plaintiff's counsel.

Sanders did "not recall having any conversations with [plaintiff's counsel] at any time concerning trial strategies or potential offensive or defensive positions." Sanders stated that he "never agreed to serve as an expert" witness for the plaintiff and "to the best of [his] recollection [his] involvement with [plaintiff's counsel] was limited to a record review and advising him that I was not in a position to serve as an expert for his case." Sanders also stated that he did "not recall any specifics of a limited 20 minute conversation over two years ago, [and he did] not possess any confidential information from this phone call that would inure to the benefit of either party."

When defendants' counsel informed plaintiff's counsel that they intended to designate Sanders as their expert witness and that special travel arrangements had to be made to take his deposition de bene esse in Denver, Colorado prior to trial, plaintiff's counsel did not recognize Sanders' name.

5

Plaintiff's counsel did not recognize Sanders' name as someone with whom he may have spoken until after plaintiff's counsel checked his billing records.

The circuit court denied the plaintiff's motion to disqualify Sanders, and the case proceeded to trial before a jury.  The jury returned a verdict in favor of the defendants, and the circuit court entered a judgment confirming the verdict.  We awarded the plaintiff an appeal from that judgment, and the sole issue that we consider on appeal is whether the circuit court abused its discretion when it denied the motion to disqualify Sanders.

Generally, the decision whether to disqualify an expert witness rests within the discretion of the circuit court.  We have not, however, considered the test that a circuit court must apply when determining whether to disqualify an expert witness who has previously been retained to consult with another party.  The majority of jurisdictions that have considered this issue have applied the following test:  Was it objectively reasonable for the first party who claims to have retained the expert witness to conclude that a confidential relationship existed between that party and the expert; and did the first party disclose any confidential or privileged information to the expert witness?  Koch Refining Co. v. Jennifer L. Boudreaux MV, 85 F.3d 1178, 1181-82 (5th Cir.

1996); Mitchell v. Wilmore, 981 P.2d 172, 175-76 (Colo. 1999);

Nelson v. McCreary, 694 A.2d 897, 903-04 (D.C. 1997).

Additionally, the party seeking disqualification bears the

burden of proving both elements of this test.  Id.

The plaintiff contends that we should adopt this test and

that the application of this test would compel

disqualification of Sanders.  Responding, the defendants also

urge this Court to adopt the same test, but they assert that

the plaintiff failed to establish that a confidential

relationship existed between his counsel and Sanders.

Additionally, the defendants argue that even if a confidential

relationship existed, the plaintiff failed to establish that

his counsel provided confidential information to Sanders.  The

defendants state that "[t]here was no formal retainer

agreement.  There [were] no work product memoranda, reports,

or confidential correspondence exchanged between [plaintiff's

counsel and Sanders]."

We agree with the plaintiff and the defendants that this

test is the appropriate test to be applied in this

Commonwealth, and the circuit court used this test.  Applying

this test, we hold that based upon the evidence of record, it

was objectively reasonable for plaintiff's counsel to conclude

that he had established a confidential relationship with

Sanders.  As we have already stated, Sanders agreed with

7

plaintiff's counsel that Sanders would review the plaintiff's medical records for the express purpose of assisting the plaintiff with his medical malpractice claim against the defendants. Sanders reviewed the plaintiff's medical records and forwarded plaintiff's counsel a bill and charged the plaintiff for "review and evaluation of records." Sanders also had a telephone conversation with plaintiff's counsel and included in the bill a fee for "phone consult with attorney." Simply stated, Sanders reached an agreement with plaintiff's counsel whereby plaintiff's counsel provided information to Sanders, Sanders evaluated that information, and Sanders discussed his evaluation with plaintiff's counsel.

We recognize that Sanders stated in his affidavit that he had "no independent recollection of having reviewed this case" and that he did not recall "the specifics of any [telephone] conversation" with the plaintiff's lawyer. However, Sanders' lack of recollection is not relevant to the inquiry whether it was objectively reasonable for plaintiff's counsel to conclude that a confidential relationship existed.

Next, we must consider whether plaintiff's counsel disclosed confidential or privileged information to Sanders. In this context, courts have concluded that the phrase "confidential information" includes discussion of: a party's strategies in litigation, the kinds of experts that the

retaining party expected to employ, a party's views of the strengths and weaknesses of each side's case, the role of each of the litigant's expert witnesses to be hired, anticipated defenses, counsel's theory of the case, and counsel's mental impressions.  Koch Refining Co., 85 F.3d at 1182; Mitchell, 981 P.2d at 176-77.

Upon our in camera review of the letter dated December 16, 1998 that plaintiff's counsel forwarded to Sanders, we conclude that the letter contained confidential information because plaintiff's counsel revealed his mental impressions and trial strategies to Sanders.  While we recognize that the value of the information that plaintiff's counsel disclosed to Sanders may be debatable, that fact does not negate our conclusion that the letter contains the work product of plaintiff's counsel.  Thus, we conclude that plaintiff's counsel disclosed confidential information to Sanders.

We hold that the trial court abused its discretion in refusing to disqualify Sanders as an expert witness. Accordingly, we will reverse the judgment of the circuit court, and we will remand this case for a new trial in which Sanders will not be permitted to testify as an expert witness.

Reversed and remanded.