Present: Hassell, C.J., Keenan, Koontz, Kinser, Goodwyn, and Millette, JJ., and Lacy, S.J.

PRESTON W. KITT, ET AL.

v. Record No. 081064      OPINION BY SENIOR JUSTICE
                                 ELIZABETH B. LACY
HOWARD KEITH CROSBY, ET AL.      February 27, 2009

FROM THE CIRCUIT COURT OF ALLEGHANY COUNTY
Malfourd W. Trumbo, Judge

Preston W. Kitt and other heirs of Henry Kitt (collectively "Kitt") appeal from an adverse judgment in an ejectment action instituted against Howard K. Crosby. Kitt first asserts that the trial court should have ruled, as a matter of law, that Kitt owned the disputed property based on a 1944 deed of conveyance and should not have submitted the issue to the jury. Kitt also assigns error to two evidentiary rulings made by the trial court. For the reasons stated below, we will affirm the judgment of the trial court.

FACTS AND PROCEEDINGS

J.L. Blizzard and his wife, Martha F. Blizzard, purchased a large parcel of land in Alleghany County in 1931. In 1944, after J.L.'s death, Martha executed a deed of conveyance to Henry Kitt. In 1995, the Blizzard heirs deeded legal title to the remaining "unsold and unconveyed" portion of the Blizzard property to James B. Mead and Virginia L. Brooks, trustees of the Lipsey-Mead Virginia Land Trust (Mead trustees). The Mead trustees sold some of the property to Howard Crosby. Crosby

also expressed interest in acquiring property he believed the Mead trustees owned which was located between the Kitt property transferred in 1944 and National Forest land. The Mead trustees agreed to sell the land to Crosby if he established that such a parcel existed and was owned by the Mead trustees. To support the Mead trustees' ownership, Crosby hired a surveyor, Gregory E. Vess, to prepare a plat depicting the land conveyed to Henry Kitt in 1944 and the remainder of the Blizzard parcel. In 2001, Crosby filed suit against the Kitt heirs to establish the boundary based on the Vess plat. That suit was dismissed without prejudice.

In 2003 Vess prepared another plat for Crosby which showed a line dividing a 26.14-acre tract owned by the Kitts from a 71.74-acre tract "represent[ing] an area of uncertain title, possibly the residue of that property conveyed to [the Mead trustees]" by the Blizzard heirs. In 2004, the Mead trustees conveyed the 71.74-acre tract shown on the 2003 Vess plat to Crosby by quitclaim deed. Crosby subsequently built roads on the 71.74-acre tract and began cutting timber on the tract in 2005.

Preston Kitt, Henry Kitt's grandson and heir, filed a complaint against Crosby alleging that the 71.74-acre tract (the disputed property) shown on the 2003 Vess plat was part of the property conveyed to Henry Kitt in the 1944 deed. In an amended

2

complaint, Kitt sought to recover possession of the land,

$221,390 in compensatory damages and $664,170 in punitive

damages.[1]

At trial, there was no dispute that the 1944 deed conveyed

a parcel of approximately 25 acres to Henry Kitt (the undisputed

property).  Kitt presented the following evidence to establish

his ownership of the disputed property.

The 1944 deed described the property conveyed as follows:

> A certain piece or parcel of land of triangular
> shape, and containing approximately twenty five (25)
> acres, more or less, and bounded as follows:
> Beginning at a point at the intersection of the Old
> Rich Patch Railroad Bed (railroad now abandoned) with
> the boundary line of a tract of land owned by the
> United States Government, thence running with said
> boundary line of the United States Government, in a
> Southerly direction to a point at the intersection of
> the said Government line with the intersection of a
> boundary (Northerly) line of a tract of land owned by
> W.L. McElwee, thence running in a Northwesterly
> direction along the Northeasterly boundary line of
> the said McElwee tract of land to a point where the
> said McElwee tract of land to a point where the said
> McElwee tract of land boundary line intersects with
> the said Old Rich Patch Railroad bed, thence from
> said point, running Easterly along the Southern edge
> of the said Railroad bed to the point of beginning
> . . . .

Kitt's surveyor, David Ingram, testified that he located

the property conveyed in the 1944 deed by the deeds and plats of

the adjacent boundaries of the two properties and railroad bed

---

[1] In addition to Preston Kitt, known heirs of Henry Kitt who
wished to participate in the litigation were included as
plaintiffs.  Known Kitt heirs who did not wish to participate
were named as defendants along with unknown heirs.

identified in the deed. Ingram agreed that there were inconsistencies in the directional calls of the deed and noted that the adjoining boundary identified in the 1944 deed as the McElwee property, had been conveyed to the United States Forest Service five years prior to the 1944 deed. Ingram further acknowledged that the deed failed to describe a significant directional change in the government property boundary line. Ingram testified that he found remnants of a fence but no fence posts and that the fence did not extend in a straight line. Ingram stated that the boundary line depicted on the 2003 Vess plat did not reconcile with the deed.

Kitt also presented testimony that Henry Kitt, a long-time employee of Martha Blizzard, lived in a house on the undisputed property, prior to and after the 1944 conveyance. Grandsons of Henry Kitt testified that the Kitt family had used the property, including the disputed property, for hunting, hiking, cutting logs, picking mushrooms, and digging ginseng. Preston Kitt claimed his father told him that "if [property is] on this mountain, it belongs to Henry Kitt or the government." Preston Kitt testified that the only fence on the property was built to enclose four to six acres near the house to keep livestock, and John Kitt testified that the fence was not built until after Henry Kitt died. Testimony presented by Kitt also showed that at one time a barn existed on the undisputed property and

4

another home and saw mill existed somewhere on the property. There was conflicting evidence as to whether the home and saw mill were on the undisputed property, along the fence line, or on the disputed property. Preston Kitt claimed that there were "drag roads," used to drag logs out of the woods, on both the disputed and undisputed property. Preston Kitt testified that he and his family continued to use the disputed property until they learned that Crosby was claiming ownership of it.

Crosby's expert surveyor, Steve P. Douty, testified that he, like Ingram, was able to find the three adjoining property lines identified in the 1944 deed. Douty also testified that the directional calls did not reconcile with the boundaries in the 1944 deed. Douty, over Kitt's objections, testified regarding drawings he made reflecting the calls, courses, and acreage recited in the 1944 deed and that he drew the line marking the boundary now claimed by Crosby in an effort "to find some combination that adheres more closely with the deed." Douty testified that this line was based in part on a fence that he found that ran the length of most of Crosby's claimed boundary line. According to Douty, when the fence reached the perpendicular boundary of the McElwee land purchased by the Forest Service the fence turned and continued along the undisputed property. No remnants of a fence were found

5

following the boundary between the disputed property and the Forest Service property.

Crosby also presented evidence that the Kitts never posted any of the property, the Blizzards only posted that portion of the property containing a quarry, and other people from the community went on the land to hunt and collect mushrooms. Crosby testified that he found an old fence on three sides of the undisputed property, including along the old railroad bed. Crosby agreed that there was evidence of a "skid road" on the disputed property.

Kitt moved to strike Crosby's evidence, arguing that, pursuant to the order of preference rule adopted in Providence Properties, Inc. v. United Virginia Bank/Seaboard National, 219 Va. 735, 744-45, 251 S.E.2d 474, 479-80 (1979), the trial court should rule, as a matter of law, that Kitt had established ownership of the disputed property because both experts could locate the boundary lines of adjoining properties. The trial court, finding questions of fact remained as to the intent of the grantor, denied Kitt's motion and submitted the case to the jury.

The jury returned a verdict in favor of Crosby. The trial court denied Kitt's motion to set aside the verdict, stating that there were "sufficient concerns" with the description of the property in the 1944 deed and that the jury had properly

6

determined "the intentions of the parties at the time of the conveyance." We awarded Kitt an appeal on four assignments of error.

## DISCUSSION

### 1. Ownership of disputed property

To prevail in an action for ejectment, the plaintiff must prove that he has good title and the right to possession of the property, and he must recover upon the strength of his own title rather than upon the weakness of the defendant's title. See White v. Lee, 144 Va. 523, 529, 132 S.E. 307, 309 (1926). The primary consideration when construing a deed is "to determine the intention of the parties executing the instrument." Camp v. Camp, 220 Va. 595, 597, 260 S.E.2d 243, 245 (1979). If the descriptions in a deed are ambiguous, parol evidence can be used to ascertain the intention of the parties at the time of the conveyance. Chesapeake Corp. v. McCreery, 216 Va. 33, 37-38, 216 S.E.2d 22, 25 (1975).

In this case, the evidence showed that the 1944 deed contained a number of inconsistencies or ambiguities including: (1) the property referred to as the McElwee tract had been conveyed to the federal government prior to 1944; (2) the directional calls in the deed were inconsistent with and could not be reconciled with the location of the adjoining properties; and (3) while the deed recited a conveyance of 25 acres "more or

less," the adjoining property boundaries encompassed approximately 97 acres.  Nevertheless, the experts for both Kitt and Crosby were able to locate on the ground the boundaries of the properties identified in the deed as adjacent to the conveyed parcel.

Kitt, relying on Providence, argues that the rule of preference requires that the deed be construed according to the "adjacent boundaries or lines of adjoining tracts" because, as the Court held in that case, descriptions of course or distance must "give way" to "known boundaries" and that quantity is "the least reliable method of describing land."  219 Va. at 744-45, 251 S.E.2d at 479.  Thus, Kitt concludes, the trial court should have applied the rule of preference and held that, as a matter of law, the adjacent boundaries and lines of adjoining tracts in this case established that the 1944 deed of conveyance included conveyance of the disputed property to Henry Kitt.  We disagree.

In adopting the rule of preference, we specifically stated that the rule "is not inflexible and will not be applied if to do so would frustrate the intent of the parties to the deed. Indeed, the rule is designed to effectuate the presumed intent of the parties."  Id. at 745, 251 S.E.2d at 480.  The rule of preference is applied to determine the grantor's intent when there is no evidence to the contrary.  Id. at 747, 251 S.E.2d at 481.  When the trial court in Providence applied the rule of

8

preference to determine the grantor's presumed intent, there was no other credible evidence showing an intent contrary to that reflected by the application of the rule of preference.  See id. at 743, 251 S.E.2d at 478.  In the instant case, in addition to the surveyors' evidence directed to locating the property on the ground as described in the deed, both parties presented additional parol evidence of intent.

Kitt's evidence was that a fence was built to keep livestock on the 25-acre parcel and that members of the Kitt family hunted and cut logs and firewood from both the disputed property and undisputed property.  This evidence conflicted with Crosby's evidence that the portions of the fence that were found supported the proposition that the fence was a boundary fence for the undisputed property conveyed in 1944.

The evidence also showed that the Kitt house was located on the undisputed property but the evidence regarding the location of other structures constructed on the property was in conflict.  Testimony located these buildings on the disputed property, the undisputed property or "right on the line or beyond the line" shown as separating the two parcels on the Vess survey.

Testimony also showed that, in addition to the Kitt family, members of the general public had used the disputed property for hunting and gathering over the years.  With the exception of a

quarry property, the Blizzard land had never been posted and no one did or would object to people hunting on the property.

Unlike the record in Providence that contained no evidence of an intent contrary to the presumed intent established by application of the rule of preference, this record contains conflicting evidence of the grantor's intent. Furthermore, the evidence of the fence and use of the disputed property was contrary to the presumption of intent that would prevail if the rule of preference alone was applied to the 1944 deed. Because evidence of intent was presented, the trial court did not err in refusing to resolve the issue of ownership as a matter of law by applying the rule of preference, and, because that evidence was in conflict, the trial court properly submitted the issue to the jury. Accordingly, we reject Kitt's first assignment of error.[2]

2. Admission of surveyor Steve Douty's testimony

In his second assignment of error, Kitt challenges the trial court's admission of certain testimony by Douty. Kitt, citing Edwards v. W. M. Ritter Lumber Co., 163 Va. 851, 857-58, 177 S.E. 841, 843 (1935), asserts that whether the disputed land was within the boundaries contained in the 1944 deed is a question of fact and expert surveyors may testify as to the facts pertaining to the location, but may not express an opinion

---

[2] Kitt does not challenge the sufficiency of the evidence to support the jury's verdict.

as to the location.[3]  According to Kitt, Douty's testimony regarding the location of the property by reference to the boundary lines of adjoining property was proper but that part of Douty's testimony discussing the location of the property based on monuments or other factors not recited in the 1944 deed, such as the old fence, amounted to opinion testimony regarding the location of the boundaries.  According to Kitt, because the boundaries of adjoining properties identified in the 1944 deed could be established, Douty should have been restricted to testifying only about those boundaries.

As we have already discussed, admission of parol evidence to determine the intent of the grantor was appropriate due to inconsistencies in the 1944 deed, and the conflicting evidence of intent precludes the application of the rule of preference as a matter of law in this case.  Therefore, Douty's testimony based on admissible evidence of intent such as the location of the old fence was proper.  Douty's discussion of diagrams he prepared to depict a parcel based on factors recited in the deed other than adjoining property boundaries involved facts pertaining to the location of the disputed property but did not amount to an opinion regarding the location of the property.

---

[3] But see Code § 8.01-401.3(B)(opinion testimony on ultimate issues).

11

Accordingly, we reject Kitt's challenge to the admissibility of Douty's testimony.

### 3. Testimony of Gregory E. Vess

Kitt called Gregory Vess as a witness to testify regarding his 2003 plat. The trial court, however, disqualified Vess from giving expert opinion testimony based on the "side switching" doctrine adopted in Turner v. Thiel, 262 Va. 597, 553 S.E.2d 765 (2001). Kitt asserts that this ruling was error because that doctrine did not apply to Vess' testimony and, if the doctrine applied, Crosby failed to satisfy the two-part test established in Turner to support expert disqualification.

In Turner we adopted the following test to be used when a party seeks to disqualify the expert of an opposing party because the expert had previously been retained by the party seeking disqualification:

> Was it objectively reasonable for the first party who claims to have retained the expert witness to conclude that a confidential relationship existed between that party and the expert; and did the first party disclose any confidential or privileged information to the expert witness?

Id. at 601, 553 S.E.2d at 768. The person seeking disqualification has the burden of proving both prongs of this test. Id. at 602, 553 S.E.2d at 768.

The record shows that Crosby hired Vess in 1999 to prepare plats reflecting ownership of the disputed property. The plat

Vess created in 2003 was filed with the 2004 quitclaim deed from the Mead trustees to Crosby. Vess, called by Kitt as a witness, testified regarding a number of factual matters involving the 2003 plat, but Kitt was not allowed to introduce a prior plat made by Vess. At that point, Kitt's counsel made the following statement:

> I believe I need at this point to be allowed to ask Mr. Vess something that might carry over from the area of fact into opinion. And, therefore, I submit that because the Defendant is the one claiming the privilege, it's up to him at this point to prove the privilege attaches and ask for a ruling of the Court on that.

Following further discussion, the trial court ruled that Crosby met his burden under Turner to have Vess disqualified as an expert witness for Kitt.

Kitt first argues that the "side switching" doctrine addressed in Turner was not applicable here because Kitt did not seek to offer Vess as an expert witness on their behalf. The statement of Kitt's counsel recited above clearly demonstrates that Kitt intended to seek opinion testimony from Vess. Since the sought-after testimony involved an opinion based on scientific, technical, or other specialized knowledge, and such opinion testimony can only be given by an expert, see Code § 8.01-401.3, the trial court, notwithstanding Kitt's protestations, correctly concluded that Kitt was treating Vess

as an expert witness, thus implicating the disqualification issue discussed in Turner.

Kitt next asserts that the doctrine does not apply because once the 2003 plat was recorded any expectation of confidentiality or privilege was waived. Again we disagree. While the plat itself is public record, confidential or privileged information obtained during the period of engagement remains protected by the disqualification rule of Turner.

We now turn to Kitt's assertion that Crosby did not meet his burden to disqualify Vess under the two-part test set out in Turner. First, the record reflects that counsel for Crosby proffered to the trial court that Vess was hired originally in 1999 in contemplation of litigation and, although the litigation filed in 2001 was dismissed without prejudice, the relationship remained ongoing on the assumption that Crosby would be a defendant in a later lawsuit. Whether a confidential relationship exists, such as a relationship in contemplation of litigation, is a function of Crosby's objectively reasonable perceptions, not those of Vess. Turner, 262 Va. at 601-02, 553 S.E.2d at 768. Therefore, regardless of Vess' perceptions of the relationship, the proffer of the nature of the relationship between Crosby and Vess supported the trial court's conclusion that Crosby met his burden of establishing a confidential relationship as required by the first prong of the Turner test.

14

The second prong of the Turner test requires a showing that confidential information was disclosed to the expert witness. Confidential information includes

> discussion of: a party's strategies in litigation, the kinds of experts that the retaining party expected to employ, a party's views of the strengths and weaknesses of each side's case, the role of each of the litigant's expert witnesses to be hired, anticipated defenses, counsel's theory of the case, and counsel's mental impressions.

Id. at 602-03, 553 S.E.2d at 768. At trial Vess testified that he had conversations with Crosby and Crosby's counsel about Vess' findings and opinions as they related to Crosby's ability to show ownership of the disputed parcel before and during the filing of the instant lawsuit. In light of this record evidence, we cannot say the trial court erred in holding that Crosby satisfied his proof burden under the second prong of the Turner test. Accordingly, we reject Kitt's third assignment of error.

### CONCLUSION

In summary, we hold that the trial court did not err in submitting the issue of ownership of the disputed property to the jury, did not err in allowing certain testimony by Douty, and did not err in disqualifying Vess as an expert offered by

15

Kitt based on the expert disqualification doctrine adopted in

Turner.[4]

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

---

[4] In light of these holdings, we need not address Kitt's fourth assignment of error regarding his punitive damage claim.

16