COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Alston and Huff
Argued at Chesapeake, Virginia


VERNON RAY CHAPPELLE

                                                        OPINION BY
v.        Record No. 0606-12-1              JUDGE ROSSIE D. ALSTON, JR.
                                                        AUGUST 20, 2013

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
James C. Hawks, Judge

Von L. Piersall, III (Von L. Piersall, III, P.C., on brief), for
appellant.

Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


On appeal from his convictions for multiple counts of abduction and use of a firearm in

the commission of a felony, Vernon Ray Chappelle (appellant) contends that the trial court erred

by allowing Dr. Alana Hollings to testify as an expert witness for the Commonwealth. Appellant

argues that the side-switching doctrine barred Dr. Hollings from testifying as an expert witness

for the Commonwealth because appellant had a prior confidential relationship with, and because

of this relationship disclosed confidential or privileged information to, Dr. Hollings.[1] Assuming

without deciding that the side-switching doctrine applies in this case, we find that appellant

failed to prove that he disclosed confidential or privileged information to Dr. Hollings.

Appellant also contends that Dr. Hollings was precluded by statute from testifying for the

_____

[1] The side-switching doctrine bars an expert witness from testifying when the party
seeking disqualification of the expert proves that it was objectively reasonable to believe a
confidential relationship existed between the party seeking disqualification and the expert, and
the party seeking disqualification disclosed confidential or privileged information to the expert.
See Turner v. Thiel, 262 Va. 597, 601, 553 S.E.2d 765, 768 (2001).

Commonwealth. We find that appellant waived this argument. Accordingly, we affirm the trial court's decision to allow Dr. Hollings to testify for the Commonwealth.

BACKGROUND

On the morning of January 3, 2008, Jeanette Chappelle, appellant's wife, was pulling out of her driveway with her son, daughter, and grandchild in the car. Appellant maneuvered his truck to block Jeanette's path, preventing her from exiting the driveway. He then brandished a firearm to force Jeanette, their two children, and their grandchild back inside the house.

Law enforcement officers arrived at Jeanette's home shortly thereafter. The officers initiated contact with appellant, who refused to exit the premises and informed the officers that he had hostages. A four-hour standoff ensued. Eventually, Jeanette and the children were able to escape. A SWAT team then entered the house and arrested appellant. Appellant was later indicted on four charges of abduction, in violation of Code § 18.2-47(A),[2] and four charges of the use of a firearm in the commission of a felony, in violation of Code § 18.2-53.1.[3]

Following appellant's arrest, the trial court appointed Dr. Evan Nelson to assess appellant's competency to stand trial and to evaluate his sanity at the time of the offense. Dr. Nelson interviewed appellant and concluded that he was competent to stand trial. Dr. Nelson also found that appellant was depressed at the time of the crimes but that he was not insane.

---

[2] Code § 18.2-47(A) states,

> Any person who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge, shall be deemed guilty of "abduction."

[3] Code § 18.2-53.1 states, in relevant part, that "[i]t shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit . . . abduction."

Shortly thereafter, the trial court appointed a second clinical psychologist, Dr. Hollings, to assess the appellant's sanity at the time of the offense. Dr. Hollings interviewed appellant on two occasions, and based on those interviews, she then concluded that appellant was insane at the time of the offense. Dr. Hollings affirmed her findings in a written report, which pursuant to statute was disclosed to the Commonwealth.[4] Nearly two years later, after receiving additional information, including appellant's medical and psychiatric reports, Dr. Hollings revised her findings and concluded that appellant was not insane at the time of the offense. It is unclear from the record whether Dr. Hollings prepared a revised written report, but it is apparent that the Commonwealth was aware that Dr. Hollings revised her conclusion and asked her to testify at trial about her revised findings.

Prompted by Dr. Hollings' revised conclusion, appellant filed a motion *in limine* to preclude Dr. Hollings from testifying for the Commonwealth. Appellant argued that the side-switching doctrine barred Dr. Hollings from testifying for the Commonwealth. According

---

[4] Code § 19.2-169.5 states in pertinent part:

> D. The evaluators shall prepare a full report concerning the defendant's sanity at the time of the offense, including whether he may have had a significant mental disease or defect which rendered him insane at the time of the offense . . . .

> E. Disclosure of evaluation results. -- The report in subsection D shall be sent solely to the attorney for the defendant and shall be deemed to be protected by the lawyer-client privilege. However, the Commonwealth shall be given the report in all felony cases, the results of any other evaluation of the defendant's sanity at the time of the offense, and copies of psychiatric, psychological, medical, or other records obtained during the course of any such evaluation, after the attorney for the defendant gives notice of an intent to present psychiatric or psychological evidence pursuant to [Code] § 19.2-168.

> F. In any case where the defendant obtains his own expert to evaluate the defendant's sanity at the time of the offense, the provisions of subsections D and E, relating to the disclosure of the evaluation results, shall apply.

to appellant, the side-switching doctrine bars an expert witness from testifying when the party seeking disqualification of the expert proves that it was objectively reasonable to believe a confidential relationship existed between the party seeking disqualification and the expert, and the party seeking disqualification disclosed confidential or privileged information to the expert. See Turner v. Thiel, 262 Va. 597, 601, 553 S.E.2d 765, 768 (2001).

Appellant's counsel argued that both prongs of the side-switching doctrine were met. He asserted that he had worked closely with and relied upon Dr. Hollings while preparing his case. While appellant's attorney could not state "chapter and verse" what they discussed, he asserted that "it was the kind of conversation a lawyer . . . would have with their expert," including discussions about trial strategy and, therefore, Dr. Hollings should be disqualified from testifying for the Commonwealth. Finally, appellant acknowledged that Code § 19.2-169.5(E), which required appellant to provide Dr. Hollings' report to the Commonwealth, created some tension with his side-switching argument, but argued that because Dr. Hollings' involvement in the case went beyond the mere information contained in her report, it was objectively reasonable to believe his relationship with Dr. Hollings was confidential.

The Commonwealth opposed appellant's motion *in limine* and argued that the side-switching doctrine has been applied exclusively in civil cases. Moreover, the Commonwealth argued that the side-switching doctrine applied to retained experts only and not court-appointed experts, as occurred in this case. Finally, according to the Commonwealth, even if the side-switching doctrine applied to criminal cases, it was not objectively reasonable for appellant to believe that he formed a confidential relationship with Dr. Hollings when Code § 19.2-169.5(E) required appellant, if he was going to present an insanity defense, to disclose Dr. Hollings' report to the Commonwealth.

The trial court denied appellant's motion *in limine*, and Dr. Hollings testified for the Commonwealth. During her testimony, Dr. Hollings stated that when she was appointed by the trial court, she received limited information with which to conduct an evaluation of appellant's sanity at the time of the offense. This differed from Dr. Hollings' normal practice of reviewing information about the individual, such as prior medical and psychiatric reports. Dr. Hollings testified that prior to interviewing appellant she received only a brief description of appellant's offense and no information concerning appellant's prior medical or psychiatric history. Dr. Hollings did, however, admit to interviewing appellant on two occasions, during which she explained to appellant the limits of confidentiality pertaining to their conversations. After completing both interviews, Dr. Hollings then opined that appellant was paranoid and delusional, and she concluded that appellant was insane at the time of the offense.

Dr. Hollings later revised her conclusion. Approximately two years after Dr. Hollings first interviewed appellant, appellant's counsel provided Dr. Hollings with appellant's medical and psychiatric records. After reviewing that information and interviewing appellant's wife, Jeanette, Dr. Hollings reconsidered her prior findings. She concluded that appellant suffered from major depression disorder without psychosis but that he was not insane at the time of his offense.

During cross-examination, appellant questioned Dr. Hollings about the information that led her to revise her opinion. Dr. Hollings explained that the information was created prior to her first interview with appellant but that it was not provided to her at that time. She admitted, however, that she had not attempted to interview or speak with appellant's wife before her initial evaluation of appellant. Dr. Hollings concluded her testimony by clarifying that neither party asked her to reevaluate her initial evaluation, but rather, on her own initiative, she reviewed the new information and revised her opinion.

At the close of the case, the jury returned guilty verdicts on three counts of abduction and three counts of using a firearm in the commission of a felony.[5] The trial court later sentenced appellant to a total of seventeen years' imprisonment, with no time suspended.

This appeal followed.

## ANALYSIS

Appellant contends that the trial court erred by allowing Dr. Hollings to testify for the Commonwealth because Dr. Hollings was barred from testifying by the side-switching doctrine announced by the Supreme Court in Turner, 262 Va. 597, 553 S.E.2d 765.

In Turner, the Court adopted the following two-part test to use when a party seeks to disqualify an opposing party's expert witness because the expert had been previously retained by the party seeking disqualification: "Was it objectively reasonable for the [party seeking disqualification] to conclude that a confidential relationship existed between that party and the expert; and did the [the party seeking disqualification] disclose any confidential or privileged information to the expert witness?" Id. at 601, 553 S.E.2d at 768. "The party seeking disqualification bears the burden of proving both prongs of the two-part test." Id. at 602, 553 S.E.2d at 768. Accordingly, this Court's inquiry relates to the determination of the existence of two separate components; a component establishing a confidential relationship between the party and the expert *and* facts and circumstances proving an actual disclosure of information to the expert from the party.

While the Supreme Court identified the two-part test as "the appropriate test" to apply when a party seeks disqualification of an expert witness, id., it did not address extending the side-switching doctrine to criminal cases. Nor has this Court held that the side-switching doctrine applies in a criminal context. Nevertheless, assuming without deciding that the

---

[5] The trial court had previously dismissed counts seven and eight of the indictment following a motion to strike made by appellant.

side-switching doctrine applies in criminal cases, we find that appellant did not meet his burden of proving an actual disclosure of confidential or privileged information to Dr. Hollings.

As the party seeking disqualification, appellant bore the burden of offering sufficient evidence that he disclosed confidential information to Dr. Hollings. Id. (requiring party moving for disqualification to show actual disclosure of confidential information). Confidential information includes,

> "discussion of: a party's strategies in litigation, the kinds of experts that the retaining party expected to employ, a party's views of the strengths and weaknesses of each side's case, the role of each of the litigant's expert witnesses to be hired, anticipated defenses, counsel's theory of the case, and counsel's mental impressions."

Kitt v. Crosby, 277 Va. 396, 407, 672 S.E.2d 851, 858 (2009) (quoting Turner, 262 Va. at 603, 553 S.E.2d at 768). At trial, appellant's counsel asserted that he had "candid discussions" with Dr. Hollings of the type a trial lawyer would have with his expert, including discussions regarding "trial approaches" and the strength of "[Dr. Hollings'] opinion that [appellant] was insane and what . . . areas [of the case] needed to be buttressed." But appellant did not introduce evidence substantiating this claim and the simple assertion that his attorney disclosed some non-specific confidential information to Dr. Hollings does not meet his burden of proof. See Jiron-Garcia v. Commonwealth, 48 Va. App. 638, 651, 633 S.E.2d 744, 750 (2006) (stating that the Court "'may act only upon facts contained in the record,' and not upon unsupported statements of counsel" (quoting Smith v. Commonwealth, 16 Va. App. 630, 635, 432 S.E.2d 2, 6 (1993))).

In some instances it may indeed prove difficult to show an actual disclosure of confidential information when the exchange of information occurred orally (rather than in writing), as here. Cf. Turner, 262 Va. at 603, 553 S.E.2d at 768 ("Upon our *in camera* review of the letter . . . plaintiff's counsel forwarded to [the expert witness], we conclude that the letter

- 7 -

contained confidential information because plaintiff's counsel revealed his mental impressions and trial strategies to [the expert witness].").  But at a very minimum, appellant had the opportunity at trial to question Dr. Hollings about what, if any, confidential information she received from appellant, and he chose not to do so.  See Kitt, 277 Va. at 407, 672 S.E.2d at 858 (upholding the trial court's finding that counsel disclosed confidential information where the expert witness testified at trial that "he had conversations with [defendant] and [defendant's] counsel about [his] findings and opinions as they related to [defendant's]" ability to show ownership of the disputed property at issue in the lawsuit).  While Code § 19.2-169.5(E) makes clear that the information disclosed by appellant to Dr. Hollings was to be deemed protected by the lawyer-client privilege, at least until appellant chose to pursue an insanity defense, it was appellant's burden under the side-switching doctrine to prove, or particularize, the actual disclosure of confidential information to Dr. Hollings, which he failed to do.

Accordingly, assuming without deciding that the side-switching doctrine applies in this case, we hold that the trial court did not err in permitting Dr. Hollings to testify because appellant did not meet his burden of proof on the actual disclosure prong of the doctrine.

In addition to his side-switching argument, appellant also argues that the trial court erred because allowing Dr. Hollings to testify violated the statutory scheme governing appellant's defense of insanity.  Appellant argues that "[t]he system enacted by Code [§§ 19.2-168, -168.1, -169.5] requires the appointment of one expert for the defense and one expert for the prosecution."  Appellant further asserts that a defendant's relationship with his appointed expert is confidential and that "the defendant and the defense attorney are free to discuss trial tactics with their respective expert" without fear that "their expert will ever be used against them."  Accordingly, appellant contends that the trial court erred in permitting Dr. Hollings to testify for the Commonwealth.  This argument is barred by Rule 5A:18.

Rule 5A:18 states, in part, that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ." The purpose of the rule "is to advise the trial judge of the action complained of so that the court can consider the issue intelligently and, if necessary, take corrective action to avoid unnecessary appeals, reversals, and mistrials." Head v. Commonwealth, 3 Va. App. 163, 167, 348 S.E.2d 423, 426 (1986). Applying Rule 5A:18, we have consistently held that we "will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).

Here, appellant did not raise before the trial court the argument he now presents on appeal. Appellant filed with the trial court a written motion *in limine* arguing that Dr. Hollings was precluded from testifying based exclusively on the side-switching doctrine. Similarly, appellant's argument at the hearing on his motion *in limine* addressed only the side-switching doctrine. The only reference appellant made at trial to the relevant statutory provisions occurred when he acknowledged the tension between his side-switching argument and Code § 19.2-169.5(E), which required appellant to disclose Dr. Hollings' report to the Commonwealth. Appellant did not argue before the trial court that Dr. Hollings was precluded by statute from testifying for the Commonwealth. Because the trial court was not provided an opportunity to consider this issue, Rule 5A:18 bars our consideration of it on appeal.

## CONCLUSION

For these reasons, we find that the trial court did not err in allowing Dr. Hollings to testify for the Commonwealth. Appellant's convictions are therefore affirmed.

Affirmed.