COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Causey and Bernhard

ALEXANDRA MULVEY

                                                          MEMORANDUM OPINION[*]
v.        Record No. 0915-24-4                               PER CURIAM
                                                          JULY 15, 2025

GERALD PHILIP RHOADS


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Petula C. Metzler, Judge

(Thomas H. Roberts; Andrew T. Bodoh; Leslie A. Shopf, Guardian
ad litem for the minor child; Thomas H. Roberts & Associates, PC,
on briefs), for appellant.

(Donna Dougherty; Family Law Group, on brief), for appellee.


Alexandra Mulvey (mother) appeals the circuit court's orders striking her motion to

modify visitation and requiring her to pay one-half of the guardian ad litem (GAL) fees.  Mother

disputes several evidentiary rulings made by the court and argues that the evidence supported

modifying visitation with her child.[1]  She also challenges the court's failure to transfer venue for

future proceedings to Louisa County.  After examining the briefs and record, the panel

unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit."

Code § 17.1-403(ii)(a); Rule 5A:27(a).

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Mother's motion to modify custody was dismissed after the circuit court struck the
evidence on her motion to modify visitation.  She does not appeal the dismissal.

BACKGROUND[2]

Mother and Gerald Philip Rhoads (father) never married but are the parents of one daughter, T.M.,[3] born in 2008. Initially, mother had sole custody of T.M., and father visited the child occasionally. In 2013, when mother and T.M. were living in West Virginia, father petitioned for custody. The West Virginia court awarded the parents joint legal custody and granted mother primary physical custody. Father moved to modify the custody arrangement in 2015. During a hearing on the motion, father presented testimony that mother had emotional issues, spoke negatively about father in T.M.'s presence, and had "made threats toward [T.M.] ranging from [the child] never seeing her mother again to killing" T.M. The court also heard evidence that the child had "tremendous fear" of mother. The West Virginia court awarded father sole legal and physical custody but granted mother supervised visitation, with the specific condition that T.M. would "NOT be left alone with" her.

Father registered the West Virginia order with the juvenile and domestic relations (JDR) district court of Prince William County in February 2016. Extensive litigation ensued in that court, and in 2019 the JDR court suspended mother's visitation entirely.[4]

In 2022, mother filed a motion to modify custody and visitation in Louisa County JDR court. The case was transferred to Prince William County JDR court, which denied mother's motion to transfer venue back to Louisa County and subsequently denied her motion to modify custody and visitation. Mother appealed to the circuit court.

---

[2] "To the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Virginia State Bar*, 302 Va. 234, 240 n.2 (2023).

[3] We use initials to protect the child's privacy.

[4] With father, the child's stepmother petitioned to adopt her. The circuit court granted the adoption, but this Court reversed. *Mulvey v. Rhoads*, No. 0460-21-4 (Va. Ct. App. Mar. 15, 2022).

- 2 -

At the time of the April 2024 circuit court hearing, T.M. was 15 years old. Mother subpoenaed T.M. to testify; father objected. The court offered to speak with T.M. in chambers, but mother refused because her counsel would be unable to question the child. The court found that it would not be in T.M.'s best interest to testify in open court and precluded the child's testimony.

At trial, Dr. Rachel Schuchart testified for father as an expert in clinical psychology.[5] Mother had retained Dr. Schuchart in January 2024 to conduct an Independent Psychological Evaluation. Dr. Schuchart met with mother and reviewed her prior medical and therapy records, after which she diagnosed mother with a personality disorder "with borderline narcissistic and histrionic trait." Dr. Schuchart recommended that mother undergo Eye Movement Desensitization Reprocessing (EMDR) as treatment for past trauma, anger management, and parenting classes before reuniting with her child.

Mother objected to Dr. Schuchart's testimony, arguing that the witness was "side flipping." Mother's counsel claimed to have discussed "some" trial strategy with Dr. Schuchart and contended that the doctor was "dealt with as an expert" and therefore not authorized to have communicated with father. Dr. Schuchart explained that mother had not retained her to testify at trial and that, although mother's counsel had spoken with her, it was merely to offer a summary of mother's medical records that the doctor had not received. The court overruled mother's objection.

Dr. Teresa Lear, an expert in clinical family and marriage counseling with a focus on trauma and attachment disorders, also testified for father. Dr. Lear had been treating T.M. for three years and previously had diagnosed her with reactive attachment disorder (RAD) based on assessment scores, observations of her behavior, and interviews with the child. Dr. Lear's report noted that T.M.'s parents had a "tumultuous relationship" during her early years. According to Dr. Lear,

---

[5] Both of father's expert witnesses, Drs. Rachel Schuchart and Teresa Lear, were permitted to testify out of order during mother's case-in-chief due to scheduling conflicts.

mother "reportedly engaged in emotional abuse" of the child when T.M. lived with her, "made bizarre, false claims to police" about father, neglected T.M., and exposed her to "inappropriate rhetoric about her father." Dr. Lear stated that RAD usually occurs during the developmental years, and she speculated that there had been a "disturbance" between mother and T.M. before T.M. was five years old. Mother moved to strike Dr. Lear's RAD diagnosis, arguing that the opinion was speculative; the court denied the motion.

Dr. Lear testified that T.M. became "visibly anxious" when discussing mother and expressed fear that police would take her from father and put her with mother. Dr. Lear stated that after mother subpoenaed T.M. for trial, T.M. was "visibly shaking, very tearful, [and] scared." Dr. Lear recommended that mother have no contact with T.M. but opined that, if contact was ordered, mother would need to establish that she had improved her capacity to maintain her own emotional state and she was complying with treatment.

In a *de bene esse* deposition, psychiatrist Dr. Amir Rehman testified for mother and explained that he evaluated her at her request. He described mother as "mentally very clear" and stated that he did not observe "any bizarre behavior, any unpredictable behavior, any sign of being delusion[al] or [having] hallucinations, any inappropriate thought process." Dr. Rehman did not discern "any signs of mental illnesses" or conclude that mother was an "imminent danger to self or others." Dr. Rehman did not perform any psychological testing.

Mother testified that when she and T.M. lived in West Virginia, she filed a protective order against father, and the police were involved when the child was removed from father. Later, when father obtained custody, police were again involved. According to mother, T.M. initially was happy during visitation. Mother denied speaking negatively about father in T.M.'s presence or telling T.M. to harm herself. Mother stated that she had a stable home and income, was engaged to be married, and had moved closer to the child.

Although mother disputed the conclusions in Dr. Schuchart's evaluation, she stated that she attempted to follow some of the recommendations. Mother testified that the night before the circuit court hearing, she tried to get into an EMDR class and researched anger management. She asserted that she took a parenting class a few days before the trial and had watched YouTube videos on interacting with teens. Mother acknowledged that she had not been in treatment with a therapist "for a few years" but referred to Dr. Rehman, the psychiatrist who evaluated her before trial, as her "new therapist."

At the conclusion of mother's evidence, father moved to strike. T.M.'s GAL, who had served in that role for seven years, joined the motion, expressing concern that mother had not addressed her mental health issues. The GAL also advised the court that T.M. did not wish to have any contact with her mother.

The court found no evidence of a material change in circumstances and struck mother's motion to modify visitation. The court expressed concern about mother's unaddressed mental health issues. Despite mother's indication that she intended "to follow some doctor recommendations," the court concluded that the timing of mother's efforts showed that she was "not serious about addressing the [mental health] issues that [were] keeping her away from her child." The court found Dr. Rehman's testimony "flippant" and concluded that his opinion was not "worth the paper it's printed [on]." The court subsequently denied mother's request for attorney fees and sanctions and assigned each party one-half of the GAL fees, which totaled $5,117.92.

## ANALYSIS

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." *Rhodes v. Lang*, 66 Va. App. 702, 708-09 (2016) (quoting *Farley v. Farley*, 9 Va. App. 326, 327-28 (1990)). "In determining whether a change in custody is warranted, the trial court applies a two-part test: (1) whether a change of circumstances

has occurred since the most recent custody award; and (2) whether such a change would be in the best interests of the child." *Khalid-Schieber v. Hussain*, 70 Va. App. 219, 228 (2019) (quoting *Parish v. Spaulding*, 26 Va. App. 566, 570-71 (1998)). This two-part test applies equally to visitation modifications. *Duva v. Duva*, 55 Va. App. 286, 291 (2009). "[T]rial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." *Id.* (alteration in original) (quoting *Farley*, 9 Va. App. at 328). "A trial court's determination of a child's best interests 'is reversible on appeal only for an abuse of that discretion, and a trial court's decision will not be set aside unless plainly wrong or without evidence to support it.'" *Rubino v. Rubino*, 64 Va. App. 256, 261-62 (2015) (quoting *Farley*, 9 Va. App. at 328).

## I. Motion to Strike

"Whether a change in circumstances exists is a factual finding that will not be disturbed on appeal if the finding is supported by credible evidence." *Ohlen v. Shively*, 16 Va. App. 419, 423 (1993) (quoting *Visikides v. Derr*, 3 Va. App. 69, 70 (1986)). "When ruling on a motion to strike a plaintiff's evidence, a trial court is required to accept as true all evidence favorable to a plaintiff and any reasonable inferences that may be drawn from such evidence." *Volpe v. City of Lexington*, 281 Va. 630, 639 (2011) (quoting *TB Venture, LLC v. Arlington County*, 280 Va. 558, 562 (2010)). When "review[ing] a trial court's decision to strike a plaintiff's evidence, [appellate courts] likewise view the evidence in the light most favorable to the plaintiff." *Id.* (quoting *TB Venture, LLC*, 280 Va. at 563).

Mother argues the circuit court erred in striking her motion to modify visitation because she offered evidence to establish a material change of circumstances, including her stable employment, relationship, and housing, and her enrollment in parenting classes. Mother contends the court erroneously focused on one factor—i.e., whether she had addressed her mental health. According to mother, even considering that factor alone, at the motion to strike, the court was obligated to credit

Dr. Rehman's testimony that mother had "no present mental health condition impairing her ability to parent the child." But the court, in judging the credibility of the witnesses, found Dr. Rehman's testimony unpersuasive, referring to it as "flippant," and finding that his opinion was "not worth the paper it's printed [on]." *See Hoebelheinrich v. Hoebelheinrich*, 43 Va. App. 543, 556 (2004) (finding no error in court's rejection of unrebutted evidence found to be unreliable); *see also Stegall v. Commonwealth*, 208 Va. 719, 722 (1968) (stating that "[u]ncontradicted evidence" is not "binding on the court" and "may be disbelieved where it is inherently improbable [or] inconsistent with circumstances in evidence").

Even crediting all of mother's evidence, mother's minimal efforts to receive mental health treatment until just days before trial supports the court's finding that she was "not serious about addressing the issues that are keeping her away from her child." The court ruled that because mother had not genuinely addressed her underlying issues, she had not established a material change in circumstances that would justify changing the existing order. Accordingly, under the facts presented in the record, the court did not abuse its discretion by granting the motion to strike the evidence.

## II. Child's Testimony

"Appellate courts 'review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to [exclude] evidence absent a finding of abuse of that discretion.'" *Chaney v. Karabaic-Chaney*, 71 Va. App. 431, 434 (2020) (alteration in original) (quoting *Harman v. Honeywell Int'l, Inc.*, 288 Va. 84, 92 (2014)). "The abuse of discretion standard draws a line—or rather, demarcates a region—between the unsupportable and the merely mistaken, between the legal error . . . that a reviewing court may always correct, and the simple disagreement that, on this standard, it may not." *Jefferson v. Commonwealth*, 298 Va. 1, 10-11 (2019) (alteration in original) (quoting *Reyes v.*

*Commonwealth*, 297 Va. 133, 139 (2019)).  Mother argues that the circuit court abused its discretion in declining to allow mother to call the child as a witness.  We disagree.

"No person who is a party to a [child custody] proceeding . . . relishes the spectacle of a child testifying in open court as to his or her preference for one parent over another."  *Brown v. Burch*, 30 Va. App. 670, 680 (1999) (first alteration in original) (quoting *Haase v. Haase*, 20 Va. App. 671, 680 (1995)).  In determining how to receive evidence from children, the court should consider the facts and circumstances of each case, including "the age and maturity of the child[], the matters to be brought forth in [the child's] testimony, the acrimony between the parents, and the likelihood of improper influence by one or both of the parents on the child[]'s testimony."  *Id*. at 681 (quoting *Haase*, 20 Va. App. at 682).  After considering "these factors and others as may be appropriate, the [judge] should then determine the method of receiving evidence [that] serves the best interest of the child[] while preserving to the greatest extent possible the procedural rights of the parents."  *Id*. (quoting *Haase*, 20 Va. App. at 682).  One option available to the court is to conduct an in camera interview with the child.  Code § 20-124.2:1.

Here, the court offered to interview T.M. in chambers "to determine from all the evidence whether it is in the child's best interest to testify given her alleged emotional fragility."  After an in camera examination, the court could have determined whether T.M. should testify in open court.  But mother objected to an in camera interview, because she wanted the opportunity to question the child.

On appeal, mother acknowledges that "Code § 20-124.2:1 provides an alternative to live, sworn testimony of minor children" but argues that "there is nothing in the statute indicating that it abolishes the option of presenting a child's testimony in visitation matters in the ordinary course of proceedings."  However, the record supports the court's refusal to have T.M. testify in open court. The child's mental health counselor, Dr. Lear, unequivocally recommended against contact between

- 8 -

mother and the child. In the counselor's experience, T.M. became visibly anxious and expressed fear when discussing mother. The court offered mother an alternative means for T.M. to testify, but mother refused.

It was within the court's purview to determine whether testifying in open court was in the child's best interest. *See Brown*, 30 Va. App. at 681; *Haase*, 20 Va. App. at 682. Credible evidence in the record supports the court's finding that it was not in T.M.'s best interest to testify in open court, based upon her mental and emotional fragility. We find no abuse of discretion in not permitting mother to call the child as a witness under those circumstances.

### III. Dr. Lear's Testimony

"The admission of expert testimony is a matter within the sound discretion of the trial court, and we will reverse the trial court's judgment only when the court has abused this discretion." *Keesee v. Donigan*, 259 Va. 157, 161 (2000). An expert witness "may give testimony and render an opinion or draw inferences from facts, circumstances[,] or data made known to or perceived by such witness at or before the hearing or trial during which he is called upon to testify." Code § 8.01-401.1; *accord* Va. R. Evid. 2:703(a). "Expert testimony generally is admissible in civil cases if it will aid the trier of fact in understanding the evidence." *Keesee*, 259 Va. at 161. "However, the admission of expert testimony is subject to certain fundamental requirements, including the requirement that the evidence be based on an adequate foundation." *Id.* "Thus, expert testimony is inadmissible if it is founded on assumptions that have an insufficient factual basis." *Id.* "An expert opinion . . . must have an adequate factual foundation, and an expert's testimony will be found to be inadmissible if it is speculative in nature." *Norfolk S. Ry. Co. v. Rogers*, 270 Va. 468, 479 (2005).

Mother asserts that Dr. Lear did not base her opinion on her own observations of the child. For that reason, she argues that the court erred in refusing to strike Dr. Lear's RAD diagnosis. The record belies mother's claim challenging the foundation of Dr. Lear's opinion.

Dr. Lear testified that her RAD diagnosis was based on assessment scores, observations of the child's behavior, and interviews with T.M. Although Dr. Lear did not witness the child's originating trauma firsthand, she had information about the parents' tumultuous relationship during the child's early years, as well as the child's difficulties while in mother's custody. Because Dr. Lear's RAD diagnosis was based on her own observations and testing of T.M., coupled with her knowledge of the child's history, we find that the court did not abuse its discretion in permitting her expert testimony.

## IV. Dr. Schuchart's Testimony

"Generally, the decision whether to disqualify an expert witness rests within the discretion of the circuit court." *Turner v. Thiel*, 262 Va. 597, 601 (2001). "[W]hen a party seeks to disqualify an opposing party's expert witness because the expert had been previously retained by the party seeking disqualification," Virginia courts apply a two-part test. *Chappelle v. Commonwealth*, 62 Va. App. 339, 346 (2013). The objecting party has the burden to establish that it was "objectively reasonable for the [party seeking disqualification] to conclude that a confidential relationship existed between that party and the expert" and that the party disclosed "confidential or privileged information to the expert witness." *Id.* (alteration in original) (quoting *Turner*, 262 Va. at 601). A party's "confidential information" includes "strategies in litigation, the kinds of experts that the retaining party expected to employ, a party's views of the strengths and weaknesses of each side's case, the role of each of the litigant's expert witnesses to be hired, anticipated defenses, counsel's theory of the case, and counsel's mental impressions." *Turner*, 262 Va. at 603.

Mother argues that the court erred in permitting father to call Dr. Schuchart, in violation of this "side-switching doctrine." Mother contends that she had a confidential relationship with Dr. Schuchart and that the court erred in allowing the doctor's opinions.

Mother hired Dr. Schuchart to conduct an independent mental health evaluation. Mother and Dr. Schuchart did not have an agreement that Dr. Schuchart would testify at trial on mother's behalf as an expert. At trial, mother's counsel asserted that he shared "confidential information" with Dr. Schuchart, including counsel's "view of this case" and "the issues related to other experts." On brief, mother again asserts that Dr. Schuchart knew her "views of the case and evidence." But mother fails to identify precisely what privileged information her counsel shared with Dr. Schuchart beyond a vague reference to counsel's "views" of the case. At trial, when asked what she discussed with mother's attorney, Dr. Schuchart stated that they "mostly spoke about . . . records that [Dr. Schuchart] had [not] received." Dr. Schuchart recalled no confidential information shared by mother's attorney. In its role as factfinder, the court was free to accept this testimony. *See Wright v. Wright*, 61 Va. App. 432, 450 (2013) (recognizing a trial court's responsibility to ascertain witness credibility and determine evidentiary weight of testimony). Because mother has not offered an objective basis to conclude that she or her counsel shared confidential information with Dr. Schuchart, we find the court did not err in permitting Dr. Schuchart to testify.

## V. GAL Fees and Attorney Fees

An opening brief must contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." Rule 5A:20(e). "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration. We will not . . . correct deficiencies in a brief." *Turner v. Commonwealth*, 67 Va. App. 46, 61 (2016) (alteration in original) (quoting *Buchanan v. Buchanan*, 14 Va. App. 53, 56 (1992)). "[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Bartley v. Commonwealth*, 67 Va. App.

740, 746 (2017) (quoting *Sneed v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010)).

On brief, mother contends that the circuit court erred in failing to award her attorney fees and in assigning her one-half of the GAL fees. As to the GAL fees, mother cites no legal authority to support her claim, including the controlling statutory authority, Code § 16.1-267(A). Regarding attorney fees, mother generally contends that she had been "denied equity," but she provides no analysis of the court's decision. "If the parties believed that the circuit court erred, it was their duty to present that error to us with legal authority to support their contention." *Fadness v. Fadness*, 52 Va. App. 833, 851 (2008). "[I]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Bartley*, 67 Va. App. at 746 (quoting *Sneed*, 301 S.W.3d at 615). Because mother "merely construct[ed] a skeletal argument" on these issues, we find her arguments waived. *Id.* (quoting *Sneed*, 301 S.W.3d at 615).

## VI. Venue

Mother challenges the court's decision to remand the case to Prince William County JDR court for future proceedings, rather than transfer venue for any future proceedings to Louisa County JDR court. Motions to transfer venue in custody and visitation cases are controlled by Code § 16.1-243(B)(2), which provides as follows: "[I]f venue lies in one of several cities or counties, the court in which the motion for transfer is made shall determine which city or county is the most appropriate venue[,]" and "[i]n the consideration of the motion, the bests interests of the child shall determine the most appropriate forum."

Here, the circuit court in Prince William County, which acquired jurisdiction because the case was appealed from Prince William County JDR court, found that it was appropriate for venue to remain in Prince William County, notwithstanding the child's current residence in Louisa County. Custody and visitation matters had been extensively litigated in Prince William County

- 12 -

JDR court between 2016 and 2019 and thereafter in Prince William County circuit court. When mother filed the motion to modify custody and visitation underlying this appeal, she did so in Louisa County JDR court. That court transferred the proceedings back to Prince William County JDR court, which subsequently denied mother's motion to transfer the case back to Louisa County. Considering the extensive, multi-year litigation that has taken place in Prince William County, the court did not abuse its discretion in finding that the best interests of the child justified the denial of mother's motion to transfer any future proceedings to Louisa County.

## VII. Appellate Attorney Fees

Both parties request appellate attorney fees and costs. "This Court has the discretion to grant or deny attorney[] fees incurred on appeal." *Stark v. Dinarany*, 73 Va. App. 733, 757 (2021). "In making such a determination, the Court considers all the equities of the case." *Id.*; *see* Rule 5A:30(b)(2)(C). After considering the record before us and the equities of the case, we deny both parties' request for appellate attorney fees.

## CONCLUSION

For these reasons, we affirm the circuit court's judgment.

*Affirmed.*